IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL WILLIAMSON, | ) | CASE NO. 1:18CV472 |
| | ) | |
| Petitioner, | ) | JUDGE JEFFREY J. HELMICK |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | KATHLEEN B. BURKE |
| WARDEN DAVE MARQUIS, | ) | |
| | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Respondent. | ) | |

Petitioner Michael Williamson ("Petitioner" or "Williamson") brings this habeas corpus action pursuant to 28 U.S.C. § 2254.  Doc. 1.  Williamson is detained at the Richland Correctional Institution, having been found guilty by a Cuyahoga County, Ohio, Court of Common Pleas jury of twelve counts of rape.  *State v. Williamson*, Case No. CR 406972 (Cuyahoga Cty. Common Pleas Ct., filed January 11, 2002).  At sentencing, the trial court sentenced Williamson to 12 consecutive life sentences.  Doc. 13-1, p. 23.

On February 28, 2018, Williamson filed his Petition for Writ of Habeas Corpus setting forth nineteen grounds for relief.[1]  Doc. 1, Doc. 1-1.  This matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation pursuant to Local Rule 72.2. As set forth more fully below, Williamson's grounds are either not cognizable, withdrawn, procedurally defaulted, and/or fail on the merits.  Thus, the undersigned recommends that Williamson's Petition for Writ of Habeas Corpus (Doc. 1) be **DISMISSED in part** and

---

[1] A petition is deemed filed when a petitioner places it the prison mailbox. *Houston v. Lack*, 487 U.S. 266, 270 (1988).  The Clerk's Office received, and filed, Williamson's Petition on February 28, 2018.  Doc. 1.  Oddly, Williamson certified that he had placed his Petition in the prison mailbox system on March 1, 2018.  Doc. 1, p. 58. The undersigned credits the earlier filed date.

**DENIED in part**.[2]  His Motion for Stay and Abeyance (Doc. 8) should be **DENIED**.

## I.  Background

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment

of a state court, the state court's factual findings are presumed correct.  28 U.S.C. § 2254(e)(1).

The petitioner has the burden of rebutting that presumption by clear and convincing evidence.

28 U.S.C. § 2254(e)(1); *see also Railey v. Webb*, 540 F. 3d 393, 397 (6th Cir. 2008).

### A.  State Court Action

#### 1.  Underlying Facts

The following summary of underlying facts is taken from the opinion of the Cuyahoga

County Court of Appeals, Eighth Appellate District of Ohio:

> {¶ 4} At trial, the victim testified that she was seven years old at the time of the rapes.
> She testified that her stepfather, the defendant, touched her breasts and private areas, and
> forced her to perform oral sex over forty times. She stated that he played dirty movies for
> her and her two brothers. She stated that two of her girlfriends would come over to play
> and that defendant would take them into a room and when they came out of the room, the
> girls looked scared and would want to leave. She testified that she did not tell her mother
> about any of these events because she was scared that she would not believe her. She also
> testified that she made several attempts to tell her mom, but that the defendant would
> enter the room and tell her to leave. She stated that her grandmother was the first person
> she told about defendant's actions.
>
> {¶ 5} In addition to the victim, the State called Sally Weindorf, a social worker with
> Children and Family Services, who testified that the victim told her what happened on
> April 20, 2001. She testified that she received a referral that the victim was being
> molested by her stepfather. Weindorf testified that the victim identified [the] defendant as
> the violater. Weindorf referred the victim to Dr. David Bar–Shain for an examination.
>
> {¶ 6} The State called Dr. Bar–Shain. He testified that he first met the victim on June 4,
> 2001, as the result of a referral from Children and Family Services. The victim allowed
> Dr. Bar–Shain to perform an internal physical examination and described the sexual
> assaults in detail. He opined that sexual abuse probably occurred.
>
> {¶ 7} The State called Officer James Simone of the Cleveland Police Department. He
> testified that on the evening of April 20, 2001, he met with the victim and Weindorf after

---

[2] The grounds in the petition that are not cognizable, withdrawn and procedurally defaulted results in a dismissal; the grounds in the petition that are addressed on the merits results in a denial.

they filed a rape complaint against the defendant. He testified that when he arrested the defendant at his home, he kept calling the victim a "f whore."

{¶ 8} The State also called Jolanda Mason, a social worker and surrogate parent with House of New Hope Foster Care Agency. She testified that she met the victim in April 2001. She testified that the victim is currently not doing well in school and suffers from flashback nightmares about the defendant as well as nightmares about the defendant trying to kill her and her foster family. Finally, the State called Roxie Blakley, the victim's grandmother. She testified that the victim spent the weekend with her and her husband in early March 2001, and told her what her stepfather had been doing to her. She testified that she did not tell the victim's mother, her daughter, because she did not think her daughter would do anything about it. She testified that she called social services on April 20, 2001 and reported the defendant's behavior.

{¶ 9} The defense presented six witnesses: Lois Fears, Michael Tracinski, Teresa Williamson, Dorothy Gudat, Rachel Williamson and Michael Williamson, himself. Ms. Fears, a friend, testified that she drove the victim to and from school and watched the victim and her brothers after school while the parents worked. She testified that she never saw or heard anything during that time. On cross-examination, she admitted that she would leave the house when the defendant came home from work.

{¶ 10} Next, Michael Tracinski, the victim's natural father, testified. He testified that Roxie Blakley, the victim's grandmother, had accused him of sexual wrongdoing with the victim when she was two years old, but that he had been cleared of all charges.

{¶ 11} Next, Teresa Williamson, the victim's mother, testified. She testified that her daughter had once been molested by a prior boyfriend's friend. She testified that her mother had made accusations of possible molestation against Tracinski, her ex-husband, and a baby-sitter, but that neither turned out to be true. She stated that she did not believe that defendant watched dirty movies with the victim or that he molested her. She also stated that the victim never told her that defendant did anything to her. On cross-examination, Teresa admitted that in her initial statement to the police, after the defendant was arrested, she stated that she believed her daughter and did not think she was making up stories. She also admitted that her relationship with the defendant was violent and that he had tried to run her over with his car while she was pregnant with their child. She also admitted that the defendant engaged in drug usage, but stated that he did not use in front of her and that she did not know to what extent because he did it while she was out of the house.

{¶ 12} Next, Dorothy Gudat testified. She testified that she is the grandmother of one of the victim's friends and that she had no knowledge if her granddaughter had ever spent the night at the victim's home.

{¶ 13} Next, Rachel Williamson testified. She is the sister of the defendant. She testified that she babysat for the victim and her brothers while their parents were at work. She testified that she never saw or heard defendant do anything inappropriate to the victim during that time. She also stated that two days before the defendant was arrested for rape,

3

she had asked the victim if the defendant had ever touched her and that she had said no. On cross-examination, she was questioned as to statements she had made to Weindorf at the time of the initial investigation. She stated that Weindorf was lying and denied making any statements about domestic violence or drug usage in the home or being threatened by defendant if she testified at trial.

{¶ 14} Finally, defendant testified on his own behalf. He testified that he did not force the victim to perform oral sex on him and denied having sexual contact with her. He also testified that he never watched dirty movies with the victim and that he did not smoke marijuana in front of the kids. On cross-examination, defendant stated that he was a strict father, but denied physically abusing the kids or his wife. He stated that his kids were lying when they said they saw him use drugs in the house. He also denied calling the victim a "f whore."

*State v. Williamson*, 2002 WL 31667650, at *1-2 (Ohio Ct. App. Nov. 27, 2002).

### 2. Procedural History

The May 2001 term of the Cuyahoga County Grand Jury issued an indictment charging

Williamson with twelve counts of rape in violation of Ohio Revised Code § 2907.02.  Doc. 13-1,

pp. 9-20.  Williamson, through appointed counsel, pleaded not guilty.  Doc. 13-1, p. 21.

The case proceeded to trial.  On December 21, 2001, the jury found Williamson guilty of

all twelve counts.  Doc. 13-1, p. 22.  On January 29, 2002, the trial court sentenced Williamson

to twelve consecutive life sentences on each count of rape.  Doc. 13-1, p. 23.  The sentencing

entry states, "Post release control is a part of this prison sentence for the maximum period

allowed . . . under R.C. 2967.28."  Do. 13-1, p. 23.  Williamson was also found to be a sexual

predator and ordered to pay a fine.  Doc. 13-1, p. 23.

### B. Direct Appeal

On March 7, 2002, Williamson, through new appointed counsel, filed a notice of appeal

in the Ohio Court of Appeals.  Doc. 13-1, p. 24.  In his brief, he raised the following assignments

of error:

1. The trial court committed plain error by permitting the prosecutor (1) to elicit inadmissible, irrelevant and highly prejudicial hearsay testimony, (2) to cross-examine defense witnesses regarding the truth of additional inadmissible irrelevant and highly

prejudicial hearsay statements not in evidence, and (3) to argue the truth of further irrelevant, inadmissible and highly prejudicial hearsay statements not in evidence to the jury in closing argument.

2. Appellant was denied the effective assistance of counsel where counsel failed to enter rudimentary objections and grossly mishandled an exculpatory witness by failing to offer his testimony, failing to adequately proffer that his testimony would have been that he coached the alleged victim's accusations and failed to file a motion for new trial based upon this exculpatory witness's more detailed post-verdict statements.

Doc. 13-1, p. 38.  On December 9, 2002, the Ohio Court of Appeals overruled both

assignments of error and affirmed the judgment of the trial court.  Doc. 13-1, pp. 124-137.

On January 21, 2003, Williamson, through counsel, filed a notice of appeal with the Ohio

Supreme Court raising the same two grounds for relief.  Doc. 13-1, pp. 138, 141.  On April 2,

2003, the Ohio Supreme Court denied Williamson leave to appeal and dismissed the appeal as

not having any substantial constitutional question.  Doc. 13-1, p. 205.

### C. 2002 Petition to Vacate or Set Aside Judgment of Conviction or Sentence

On October 17, 2002, while his direct appeal was pending, Williamson, pro se, filed a

petition to vacate or set aside judgment of conviction or sentence in the trial court.  Doc. 13-1, p.

206.  In his petition, he raised the following claims:

1. Inadmissible, irrelevant, and highly prejudicial hearsay testimony. Attorney John Gill did not object to any prejudicial hearsay testimony the prosecutor said to me and my witnesses.

2. Prosecutor and Judge denied testimony of 3 witness on my behalf.  3 of whom was sum[oned]. Attorney John Gill sum[oned] Michael Williamson II, Logan Blakley, and Mark Neiswonger. The prosecutor objected to it and the Judge denied their testimony.

Doc. 13-1, pp. 207-208.  On October 31, 2002, the trial court denied Williamson's petition.  Doc.

13-1, p. 218.  Williamson did not appeal.

### D. Motion for New Trial

On December 4, 2002, Williamson, pro se, filed a motion for new trial in which he

argued that his indictment had been amended without objection by trial counsel; prosecutorial

misconduct; and ineffective assistance of trial counsel.  Doc. 13-1, pp. 219-220.  On December

20, 2002, the trial court denied Williamson's motion.  Doc. 13-1, p. 221.  Williamson did not

appeal.

### E. First Federal Habeas Petition

In March 2004, Williamson, pro se, filed a petition for a writ of habeas corpus in the

Northern District of Ohio challenging his 2002 convictions for rape.  Doc. 13-1, pp. 222-240.  In

his petition, he raised the following grounds for relief:

> **GROUND ONE**: Prosecutorial Misconduct.
> **Supporting Facts**: A trial court commits plain error by permitting the prosecutor
> (1) to elicit inadmissible, irrelevant and highly prejudicial hearsay testimony, (2) to cross-
> examine defense witnesses[] regarding the truth of additional inadmissible, irrelevant and
> highly prejudicial hearsay statements not in evidence, and (3) to argue the truth of further
> irrelevant, inadmissible and highly prejudicial hearsay statement not in evidence to the
> jury in closing arguments.
>
> **GROUND TWO**: Ineffective Assistance of Counsel.
> **Supporting Facts**: A criminal defendant is denied the effective assistance of
> counsel where counsel failed to enter rudimentary objections and grossly mishandled an
> exculpatory witness by failing to offer his testimony, failing to adequately proffer that his
> testimony would have been that he coached the alleged victim's accusations, and failing
> to file a motion for new trial based upon this exculpatory witness's more detailed post-
> verdict statements.
>
> **GROUND THREE**: Withholding evidence.
> **Supporting Facts**: On April 20, 2001, appellant was arrested, during the arrest,
> officers removed a blanket from appellant's home saying that appellant's DNA was on it.
> Appellant was ordered to take a DNA test. During the trial, this item that was taken from
> appellant's home was never entered in as evidence. If this item would have been at trial,
> it would of showed that the wrong person was being charged. Because of prosecution's
> and defense counsel's multiple instances of misconduct, both prosecutor and defense
> counsel failed to protect appellant's right to seek dire[ct] appellant's review of the
> inadmissibility of this item which was taken from appellant's home. This fell well below
> an objective standard of reasonableness.

Doc. 13-1, pp. 224, 234, 239.  On July 6, 2005, the Magistrate Judge issued a report and

recommendation that the petition should be denied because the first two grounds for relief were

without merit and the third ground for relief had not been fairly presented in the state courts.

Doc. 13-1, pp. 241-256.  On February 6, 2006, the District Judge adopted the report and recommendation and denied the petition for writ of habeas corpus.  Doc. 13-1, pp. 257-271.  On November 6, 2006, the Sixth Circuit Court of Appeals denied Williamson's motion for a certificate of appealability.  Doc. 13-1, pp. 272-274.  On May 14, 2007, the United States Supreme Court denied Williamson's petition for a writ of certiorari.  Doc. 13-1, p. 275.

### F. Motion to Vacate Void Judgment and Order New Sentencing Hearing

On December 13, 2011, Williamson, pro se, filed a motion to vacate void judgment and order new sentencing hearing in the trial court.  Doc. 13-1, p. 276.  He argued that, although the trial court notified him that post release control was part of his sentence, it failed to notify him of the consequences of violating post release control.  Doc. 13-1, p. 282-283.  He sought a de novo resentencing hearing.  Doc. 13-1, p. 285.  On February 3, 2012, the trial court denied Williamson's motion and advised that it would "resentence defendant on PRC issue only prior to release from prison if necessary."  Doc. 13-1, p. 292.  Williamson did not appeal.

### G. Motion to Correct Sentence

On November 16, 2012, Williamson, pro se, filed a motion to correct sentence in the trial court.  Doc. 13-1, p. 293.  In his motion, He set forth the following claims:

1. Trial court erred in not advising of right to appeal pursuant to Ohio Criminal Rule 32(B).

2. Trial court failed properly to impose post release control pursuant to Ohio Revised Code 2967.28.

3. Trial court erred by not considering the necessary factors set forth in Ohio Revised Code 2929.11 and 2929.12.

Doc. 13-1, pp. 295-297.  On January 9, 2013, the trial court denied Williamson's motion to correct sentence.  Doc. 13-1, p. 309.

On January 28, 2013, Williamson, pro se, appealed to the Ohio Court of Appeals.  Doc.

13-1, p. 310.  He raised the following assignments of error:

> 1. Trial court erred in not advising of right to appeal pursuant to Ohio Criminal Rule
> 32(B).
>
> 2. Trial court failed to properly impose post-release control pursuant to Ohio Revised
> Code 2967.28(B).
>
> 3. Trial court erred in not considering the necessary factors set forth in Ohio Revised
> Code 2929.11 and 2929.12.
>
> 4. Trial court erred in failing to determine the number of days of jail time credit before
> imposing sentence.
>
> 5. Trial court abused its discretion by entering an incorrect journal entry.
>
> 6. Trial court failed to properly impose sanctions under Ohio Revised Code 2950
> pursuant to ORC 2929.13(I).
>
> 7. Trial court erred in convicting of charges that were of a duplicitous [sic] indictment.

Doc. 13-1, p. 319.  On August 29, 2013, the Ohio Court of Appeals found that the claims raised

in Williamson's first and third through seventh assignments of error were barred by the doctrine

of res judicata.  Doc. 13-1, pp. 376-385.  As for Williamson's second assignment of error, the

court held that it must presume that Williamson was properly notified of post release control at

sentencing because Williamson failed to submit the transcript of the sentencing proceedings.

Doc. 13-1, p. 382.  However, the court found error because the sentencing entry did not

incorporate the notification.  Doc. 13-1, p. 383.  Accordingly, the Ohio Court of Appeals

reversed the trial court's January 2013 judgment denying Williamson's motion to correct

sentence and remanded the case to the trial court to issue a corrected nunc pro tunc judgment

entry.  Doc. 13-1, pp. 384-385.

On October 3, 2013, Williamson, pro se, appealed to the Ohio Supreme Court.  Doc. 13-

1, p. 387.  He set forth the following propositions of law:

8

1. Trial Court erred in not advising of right to appeal pursuant to Ohio Criminal Rule 32(B).

2. Trial Court erred by not considering the necessary factors set forth in Ohio Revised Code 2929.11 and 2929.12.

3. Trial Court erred for failing to determine the number of days of confinement owed before sentence was imposed.

4. Trial Court abused its discretion by entering an incorrect journal entry.

5. Trial Court failed to properly impose sanctions under Ohio Revised Code 2950 pursuant to Ohio Revised Code 2929.13(I).

6. Trial Court erred in trying and convicting of crimes that were not specific to distinguish different crimes charged due to duplicitous [sic] indictment.

Doc. 13-1, p. 390.  On December 24, 2013, the Ohio Supreme Court declined to accept jurisdiction of the appeal pursuant to S.Ct.Prac.R. 7.08(B)(4).  Doc. 13-1, p. 417.

### H. September 2013 Nunc Pro Tunc Sentencing Entry

On September 27, 2013, pursuant to the Ohio Court of Appeals' remand, the trial court issued a journal entry correcting the January 2002 sentencing entry to include complete post release control language.  Doc. 13-1, p. 418.

On October 24, 2013, Williamson, pro se, appealed to the Ohio Court of Appeals.  Doc. 13-1, p. 419.  In his brief, he raised the following assignments of error:

1. The trial court erred in imposing post-release control by a "conventional" nunc pro tunc journal entry when it did not impose post-release control at the original sentencing hearing.

2. The trial court erred in imposing post-release control by nunc pro tunc journal entry when it did not impose post-release control at the original sentencing hearing or at any subsequent hearing.

Doc. 13-1, p. 428.  This appeal was assigned Case No. CA-100563.  Doc. 13-1, p. 427.  The Ohio Court of Appeals later consolidated this case with another appeal (Case No. CA-101115) described below.

## I. February 2014 Resentencing

On February 13, 2014, Williamson, with appointed counsel, appeared in the trial court for a resentencing hearing limited to the proper notification regarding post release control.  Doc. 13-1, p. 448.

On March 14, 2014, Williamson, through counsel, filed a notice of appeal to the Ohio Court of Appeals.  Doc. 13-1, p. 449.  Williamson raised the following assignments of error:

> 1. The trial court erred by conducting a hearing to remedy its previous failure to advise appellant of post-release control, without having jurisdiction to do so.

> 2. The trial court erred, having failed to impose post-release control at appellant's sentencing, erred by conducting a subsequent hearing limited to the narrow scope of post-release control notification, rather than conducting a new sentencing hearing. STATE V. FISCHER, (2010), 128 Ohio St. 3d 92.

Doc. 13-1, p. 460.  This case was assigned Case No. CA-101115.  Doc. 13-1, p. 457.

On September 11, 2014, the Ohio Court of Appeals issued an opinion as both cases currently pending on appeal.  As for Case Number CA-100563 (Williamson's appeal of the nunc pro tunc sentencing entry), the court determined that its previous mandate to the trial court to issue a nunc pro tunc order was without foundation because, having now reviewed the initial sentencing transcript, it found that the trial court had not advised Williamson of post release control provisions at sentencing.  This could not be corrected via a nunc pro tunc entry.  Doc. 13-1, pp. 492-493.

As to case number CA-101115, the Ohio Court of Appeals agreed that the trial court did not have jurisdiction to hold a resentencing hearing while his appeal of the nunc pro tunc order was pending, thus sustaining Williamson's first assignment of error.  Doc. 13-1, p. 493.  The court overruled his second assignment of error because Williamson was not entitled to a de novo hearing.  Doc. 13-1, pp. 493-494.

In short, the trial court's February 13, 2014, judgment entry of resentencing was reversed and the case was remanded for a new sentencing hearing limited to the proper notification regarding post release control. Doc. 13-1, p. 494. Williamson did not appeal the Ohio Court of Appeals' decision.

**J. November 2014 Resentencing**

On November 6, 2014, Williamson, with counsel, appeared in the trial court for a second resentencing hearing limited to the proper notification regarding post release control. Doc. 13-1, p. 496.

On December 9, 2014, Williamson, through new appointed counsel, filed a notice of appeal to the Ohio Court of Appeals. Doc. 13-1, p. 497. Counsel for Williamson filed an *Anders* brief stating that there were no appealable issues in the case and moved to withdraw. Doc. 13-1, p. 503-507. The Ohio Court of Appels offered Williamson the opportunity to file a pro se brief, Doc. 13-1, p. 509, but Williamson did not do so. Doc. 13-1, p. 512. On July 16, 2015, after an independent review of Williamson's case, the Ohio Court of Appeals found no error and affirmed the trial court's judgment. Doc. 13-1, pp. 513-514.

On August 27, 2015, Williamson, pro se, filed a notice of appeal to the Ohio Supreme Court. Doc. 13-1, p. 516. In his memorandum in support of jurisdiction, Williamson set forth the following propositions of law:

> 1. Trial Court erred in having failed to impose Post-Release Control at Appellant's original sentencing and erred by conducting a subsequent sentencing hearing limited to the narrow scope of Post-Release Control notification rather than conducting a new sentencing hearing.
>
> 2. Trial Court committed harmful error in failing to grant Defendant-Appellant leave to address issues relating to his sentencing in connection with the 06 November 2014 resentencing hearing.

Doc. 13-1, p. 159.  On November 10, 2015, the Ohio Supreme Court declined to accept jurisdiction of the appeal pursuant to S.Ct.Prac.R. 7.08(B)(4).  Doc. 13-1, p. 535.

### K. Application for Reopening pursuant to Ohio App. Rule 26(B)

On August 31, 2015, Williamson, pro se, filed an Ohio App. R. 26(B) Application to Reopen his direct appeal in the Ohio Court of Appeals.  Doc. 13-2, p. 9.  He argued that he did not receive the notice permitting him to file a brief after appellate counsel, appealing the November 6, 2014, sentencing, filed an *Anders* brief.  Doc. 13-2, p. 13.  In his application, Williamson identified the claims he asked appellate counsel to raise:

> 1. Trial court abused its discretion by entering an incorrect journal entry.
>
> 2. Trial court erred by not considering the necessary factors set forth in Ohio Revised Code 2929.11 and 2929.12.
>
> 3. Trial court erred by not determining the number of days of confinement owed before sentence was imposed.
>
> 4. Trial court erred in trying and convicting of crimes that were not specific to distinguish different crimes charged due to duplicitous [sic] indictment.
>
> 5. Trial court erred in an unreasonable delay in imposition of sentence.
>
> 6. Trial court erred in sentencing to consecutive sentences without making the requisite required statutory findings with reasons on the record.
>
> 7. Trial court failed to properly impose sanctions under Ohio Revised Code 2950 pursuant to Ohio Revised Code 2929.13(I).

Doc. 13-2, pp. 14-45.  On December 9, 2015, the Ohio Court of Appeals denied Williamson's application to reopen because his claims were barred by the doctrine of collateral estoppel and because his ineffective assistance of appellate counsel claims should have been filed in a Rule 26(B) Application with respect to his 2002 appeal.  Doc. 13-2, pp. 48-49.

On January 7, 2016, Williamson, pro se, appealed to the Ohio Supreme Court and raised the same claims.  Doc. 13-2, pp. 51, 54.  On February 24, 2016, the Ohio Supreme Court

declined to accept jurisdiction of the appeal pursuant to S.Ct.Prac.R. 7.08(B)(4).  Doc. 13-2, p.

80.

### L. Second Petition to Vacate or Set Aside Judgment of Conviction or Sentence

On November 16, 2015, Williamson, pro se, filed a petition to vacate or set aside

judgment of conviction or sentence in the trial court.  In his petition, Williamson made the

following claims:

> 1. Counsel failed to raise the lack of the trial court's jurisdiction to enter judgment on
> conviction of the 12 counts or to sentence or resentence the Defendant to one life-
> sentence per count because of a violation of the Defendant's federal and state
> constitutional rights to due process of law and a fair trial and against double jeopardy,
> because all the counts of the indictment, as well as the descriptions in the Bill of
> Particulars were, duplicative, U.S. v. Foster, 765 F. 3d 610 (6th Cir. 2014), HN. 1; and,
> accordingly, void.

> 2. Counsel failed to rai[s]e the lack of this court's jurisdiction to resentence unless it
> actually did vacate the previous sentencing and resentence in full pursuant to the order of
> the Cuyahoga County Court of Appeals in State v. Williamson, No.: CA-102320, that:
> > "[W]e remand this case for the vacation of the order dated February 13, 2014 [the
> > latest imposition of sentence] and a new sentencing hearing....
> The Court of Appeals did not itself order the Defendant's previous sentence vacated, nor
> did it re-sentence the defendant. It ordered this Court to do both these things. This Court
> did neither. [Sen. Tr. 11.6.2014, 21, 22-25-23 1-2]. Inaction on the record constitutes
> actions *dehors* record; the appellate court erred in finding compliance in its direct appeal
> decision, and defendant's MISJ to the Supreme Court does not entitle him to a merits
> review of this issues.

> 3. Counsel failed to raise the lack of this court's jurisdiction to resentence the Defendant
> to add additional punishment, post-release control, or 5 years of post-release control,
> upon a conviction for which the defendant had already received punishment, and for
> which he had already served prison time, with jail-time credit, as of 11.6.2014, of 13
> years, because the imposition of the additional punishment, was, and is, a violation of the
> double jeopardy and due process of law clauses of the U.S. and Ohio Constitutions. See,
> Hernandez v. Kelly, 108 Ohio St. 3d 395 (2006); Gensley, v. Eberlin, 110 Ohio St. 3d
> 1474 (2006).

> 4. Counsel failed to raise the voidness of resentencing, or sentencing, the Defendant to 12
> life-sentences because of the trial court's vindictiveness caused by counsel's
> ineffectiveness in promising the Defendant a plea agreement (see, infra) not realizable,
> causing the Defendant to exercise his right to go to trial and to confront the witnesses
> against the Defendant, especially the victim, in violation of the Defendant's rights to
> Ohio and federal due process of law.

"Your continued abuse, as far as I'm concerned of the victim by putting her on the stand, calling her credibility into question... it's reprehensible and shall be held against you. ...There is going to be no let up from me, none whatsoever. I'm sentencing you to 12 life sentences."
[Sen. Tr., 870, 5-22].

5. Counsel failed to raise the voidness of the resentencing hearing because the Defendant was being brought back from his places of incarceration all over Ohio to the trial court for repetitive resentencings in disregard of due process of the law and against cruel and unusual punishment:
        As to Claims No.'s 1-5, had counsel effectively represented the Defendant, the outcome of the hearing would have been different.

6. Counsel offered the Defendant a plea deal to a limited reasonable term of years, and then told him inside the courtroom he was not going to get it. This so mentally deranged the Defendant he was not capable of allocuting intelligibly, or understanding the nature of the sentencing hearing to be able to effectively assist his counsel. See, Lafler v. Cooper, 132 S.Ct. 1376 (2012); Missouri v. Frye, 132 S.Ct. 1399 (2012).

7. This court lacked subject matter jurisdiction, a federal constitutional right, to enter judgment on conviction of the 12 counts or to sentence or resentence the Defendant to one life-sentence per count because of a violation of the Defendant's federal and state constitutional rights to due process of law and fair trial, and against double jeopardy because all the counts of the indictment, as well as the description in the Bill of Particulars, were duplicative. See, Foster supra. The indictment itself was void.

8. This Court lacked subject matter jurisdiction, a federal constitutional right to resentence the Defendant unless it actually did vacate all previous sentences, and resentenced the Defendant, which it did not.

9. This Court lacked subject matter jurisdiction, a federal constitutional right, to add an additional punishment of 5 years mandatory PRC after the defendant had already received punishment and had served 13 years of his sentence because such a resentencing was in violation of the double jeopardy and due process clauses of the U.S. and Ohio Constitutions Foster, supra, HN. 1.

10. This Court lacked subject matter jurisdiction to sentence the Defendant to 12 consecutive life sentences plus $240,000.00 in fines, plus court cost, because its sentence was motivated by vindictiveness because Defendant went to trial, a right he had under the 5th and 6th Amendments. See, ¶13, supra.

11. This Court lacked subject matter jurisdiction to re-sentence the Defendant because the Defendant was being brought back to the common pleas court repeated times for Known-to-be-violative-of-due-process sentencings, [footnote omitted] in disregard of his federal and Ohio constitutional rights to due process of law and against cruel and unusual punishment, see, Hernandez, Gensley, supra.

14

12. This Court lacked subject matter jurisdiction to resentence the Defendant by affirmatively denying him his Ohio and federal due process right of allocution at sentencing, and his concomitant right under R. Crim P. 32. [Sen. Tr. 11.6.2014, 19:20-25-20: 1-2]:

> "The Court: Sustained. We're not talking about your indictment. The Defendant: All right. Well, the trial – wait, go back. In State versus Freeman, 2010-Ohio-3714, the Court stated in a certain manner of his due process rights was violated – oh, I can't do that. You said no.
> In conclusion then ... ."

See, Crim. R. 32; State v. Roberts, 137 Ohio St. 3d 230 (2013), HN. 9;

> "where an opportunity to be heard is denied altogether, the ensuing mandate of the Court is void... ." Sunal v. Large, 332 U.S. 174 (1947), quoting Escoe v. Serbst, 295 U.S. 190, 494 (1935).

Doc. 13-2, pp. 84-88.  On March 2, 2016, the trial court denied Williamson's petition.  Doc. 13-2, p. 108.

On March 30, 2016, Williamson, pro se, appealed to the Ohio Court of Appeals.  Doc. 13-2, p. 109.  He raised the following assignments of error:

1. The Trial Court failed to provide statutorily required Findings of Facts and Conclusions of Law and, accordingly, the appeal should be remanded to the trial court to so provide.

2. The Trial Court deliberately refused to provide this defendant with Findings of Fact and Conclusions of Law, in line with its history of judicial vindictiveness against this defendant, justifying this Court as an equitable matter, deciding this appeal de novo.

3. The Trial Court's previous history of judicial vindictiveness against this Defendant, coupled with the failure to provide Findings of Fact and Conclusions of Law instantly justifies dismissal of the underlying criminal conviction, and/or its sentence, with prejudice.

4. The trial Court erred in denying Petitioner's PCRP motion for appointment of counsel.

Doc. 13-2, pp. 118, 121, 125, 127.  On September 29, 2016, the Ohio Court of Appeals overruled Williamson's assignments of error and affirmed the judgment of the trial court.  Doc. 13-2, pp. 197-215.

On October 28, 2016, Williamson, pro se, appealed to the Ohio Supreme Court.  Doc. 13-2, p. 216.  He set forth the following propositions of law:

1. It was an abuse of discretion, and, separately, a violation of both the 14th and 6th Amendments' due process clauses, and the Ohio Constitution's due process clauses, for the trial court to fail to provide statutorily required Findings of Fact and Conclusions of Law.

2. Given the trial court's previous history of judicial vindictiveness against this Defendant, coupled with the trial court's failure to provide substantive Findings of Fact and Conclusions of Law, the 6th and 14th Amendments' due process clauses, and the Ohio Constitution's due process clauses, separately mandated the vacation of the underlying criminal convictions, and/or their sentences.

3. It was an abuse of discretion, and, separately, a violation of both the 14th and 6th Amendments' due process clauses, the Ohio Constitution's due process clauses, and the 14th Amendment's equal protection clauses, for the trial court not to have appointed Williamson, an indigent defendant requesting appointment of counsel, a lawyer for the PCRP proceeding.

4. The appellate court erred, and violated Williamson's federal procedural due process rights by not providing a substantive review of certain of Williamson's claims in the PCRP.

5. The appellate court erred in finding that the PCRP was not timely filed.

Doc. 13-2, pp. 219-220.  On March 15, 2017, the Ohio Supreme Court declined to accept

jurisdiction of the appeal pursuant to S.Ct.Prac.R. 7.08(B)(4).  Doc. 13-2, p. 258.

### M. Application for DNA testing

On November 23, 2016, Williamson, pro se, filed an application for DNA testing with the

trial court.  Doc. 13-2, p. 259.  He wanted testing performed on flooring and a cup that the victim

testified she had spit on.  Doc. 13-2, p. 261.  On December 7, 2016, the trial court denied

Williamson's application for DNA testing as untimely.  Doc. 13-2, p. 280.

On December 29, 2016, Williamson, pro se, appealed to the Ohio Court of Appeals.

Doc. 13-2, p. 281.  He raised the following assignments of error:

1. It was error for the trial court to find the application was not timely filed.

2. This Court can and should review the action of the trial court for abuse of discretion, and find that Williamson met the statutory substantive grounds and criteria for comparative testing and distribution of results.

3. This Court can and should review the action of the trial court for abuse of discretion, and find statutory substantive grounds and criteria for comparative testing and distribution of results.

Doc. 13-2, p.289.  On June 8, 2017, the Ohio Court of Appeals reversed the trial court's

judgment, finding that timeliness was not a valid reason for rejecting the DNA application.  Doc.

13-2, pp. 335-339.  The court remanded the matter to the trial court to issue a judgment listing

the reasons for rejecting the DNA application in accordance with R.C. 2953.71 through 2953.81.

Doc. 13-2, pp. 338-339.

On October 12, 2017, on remand, the trial court rejected Williamson's application for

DNA testing finding that the application failed to satisfy all the prongs of R.C. 2953.74(C) and

finding that the results of the DNA testing would not have been "outcome determinative."  Doc.

13-2, pp. 355-359.  On November 9, 2017, Williamson, pro se, appealed to the Ohio Court of

Appeals.  Doc. 13-2, p. 361.  He raised the following assignments of error:

1. The dispositive Opinion factual finding, that "the physical cup itself and samples from the floor are unavailable for DNA testing at this point" was not made in accordance with statutory requirements and, therefore, fails.

2. The dispositive trial court legal conclusion that "the presence of [Neiswonger's or] another person's DNA [in or on the cup or immediate flooring] would not have … completely ... exonerated [the] defendant [with an] ... exclusion result," establishes a standard for the requirement (as to DNA application rejection) of 2953.74(B)(4) contrary to Ohio law, and thus fails.

3. The dispositive Opinion mixed finding of fact and conclusion of law that "the cup and floor relate to only one incident [out of the victim's allegations that the Defendant raped her in 'forty-plus incidents'"] thus [even if some other person's, and not the Defendant's, DNA was found in or on the cup or in the immediate flooring, that] "evidence would not exonerate [Williamson] for all [12] counts [with an exclusion result [and thus the requirements of 2953.71(C)(4) as defined by 2953.71(L) were not met], misstates the key fact; and misstates the law as to 2953.74(C)(4), and thus fails.

4. The Opinion and Order erroneously ignores Williamson's application made pursuant to R.C. 2953.74(B).

5. The Opinion and Order erroneously fails to analyze the requirements of the U.S. and Ohio constitution implicated in R.C. 2953.71-2953.81, mandating the DNA testing requested.

6. The R.C. 2953.71-2953.81 statutory scheme is unconstitutional und the due process and equal protection clauses of the 14th Amendment; and under the due process and equal protection clauses of the Ohio Constitution.

Doc. 13-2, pp. 368-380.  On June 7, 2018, the Ohio Court of Appeals overruled Williamson's assignments of error and affirmed the trial court's judgment.  *See State v. Williamson*, 2018-Ohio-2226 (Oh. Ct. App. June 7, 2018).  Williamson appealed to the Ohio Supreme Court, but the court did not accept his appeal for review.  *State v. Williamson*, 2018-Ohio-4092 (Oct. 10, 2018).

### O. Motion for Leave to File a Delayed Motion for New Trial

On March 16, 2018, Williamson, pro se, filed a motion for leave to file delayed motion for new trial alleging he was unavoidably prevented from discovering new evidence within 120 days of his verdict: the alleged conviction of Neiswonger of rape.  Doc. 13-2, pp. 423-426.  On March 23, 2018, the trial court denied Williamson's motion.  Doc. 13-2, p. 432.

On April 24, 2018, Williamson, pro se, appealed to the Ohio Court of Appeals.  Doc. 13-2, p. 433.  This appeal is currently pending in the Ohio Court of Appeals.  Case No. CA-18-107117.

### P. April 2018 Motions

On April 9, 2018, Williamson, pro se, filed a second motion for leave to file a delayed motion for new trial, a petition for post-conviction relief, and a motion for new trial/request for R.C. 2953.21 post-conviction relief.  Doc. 13-2, pp. 441, 450, 457.  On April 13, 2018, all three motions were denied by the trial court.  Doc. 13-2, pp. 467-469.

On April 24, 2018, Williamson, pro se, appealed to the Ohio Court of Appeals.  Doc. 13-2, p. 506.  This appeal is currently pending in the Ohio Court of Appeals, Case No. CA-18-

107162.  The Ohio Court of Appeals, sua sponte, consolidated Williamson's two pending appeals.

### Q. Second Federal Habeas Petition

On February 28, 2018, Williamson, pro se, filed his current Petition for a Writ of Habeas Corpus.  Doc. 1.  Williamson's Petition is 59 pages long, his Memorandum in Support of his Petition is 107 pages long, his Traverse is 56 pages long, and his Motion for Stay and Abeyance, which he routinely refers to, is a total of 36 pages long.  Doc. 1, Doc. 1-1, Doc. 8, Doc. 8-1, Doc. 33.  Throughout his filings, Williamson discusses his grounds for relief but is not consistent in numbering them.  See, e.g., Doc. 1-1, pp. 21-22 (identifying an apparent ground for relief as (1), A, B, and Proposition 1).[3]  In his Return of Writ, Respondent sets forth Williamson's claims in numerical order.  Doc. 22, pp. 23-29.  In his Traverse, Williamson complains about the sequential numbering of his grounds for relief by Respondent (Doc. 33, pp. 4, 19) but he does not appear to disagree that Respondent, regardless of the numbering, has accurately set forth his grounds.[4]  For convenience, the undersigned will refer to, and discuss, Williamson's grounds for relief following the sequential numbering and citations set forth by Respondent:

> **GROUND ONE:** Special First Assignment of Error and Grounds for Petition: Remand to the trial Court is Mandated Under the Federal Constitution for a constitutionally proper hearing on, and issuance of and for, a judgment of conviction and sentence, from which petitioner must be given his constitutionally mandated rights under the Constitution of the United States, of ab initio appeal and collateral attack on that judgment pursuant to, inasmuch as they are not in violation of that mandate, the laws of the State of Ohio.

Doc. 1, p. 8; Doc. 1-1, pp. 2, 19.

---

[3]  The primary confusion seems to stem from the fact that Williamson often refers to his grounds for relief by the number in which they appeared in his briefs filed with the state courts or identified by the outline number in his brief, rather than by a designated ground for relief in his Petition.  See, e.g., 1-1, pp. 2-3 (table of contents), pp. 50-51 (Under the heading "Ground 2," setting forth 13 "claims").  He also refers to "Hypothetical Claim[s]" 1, 2, and "III.F."  Doc. 1-1, pp. 66, 70, 75.  The undersigned has verified that all purported claims listed by Williamson in his filings are included in the 19 Grounds for relief listed by Respondent.

[4] In his Traverse, Williamson complains that Respondent discussed *too* many of his claims.  Doc. 33, pp. 34-35.

**GROUND TWO:** Special Second Assignment of Error and Grounds for Petition: Each of the other grounds for this Petition call for the effectuation of an remedy, Williamson asserts, by order and judgment of this Court, of the reversal of the T.C. judgment of 11.6.2014 (and its journal entry of 11.6.2014), and Williamson's remand to the trial court at a position in the state in which Williamson has yet to receive an effective, full and "real" judgment of conviction and sentence.

The courts of Ohio, however, pursuant to <u>Fischer</u>, supra, hold that the 11.6.2014 sentence-only "judgment" was a valid constitutionally permitted judgment If this is so, Williamson here argues: (1) [another resentencing would violate] the due process clauses, and/or the prohibition against cruel and unusual punishment clause (incorporated into the due process clause of the 14 Amendment). . . .

Argued in the alternative, since the Ohio appellate courts will not entertain a further appeal directly from the 2002 "conviction" portion of the judgment because they would invoke a state collateral estoppel rule/which contradicts the holding of <u>Stansell</u>, supra, . . . grounds, or claims Williamson makes in his petition stemming directly from the 2002 conviction/sentence new, or not are, and should be deemed, exhausted for § 2254 purposes.

Doc. 1, pp. 12-13; Doc. 1-1, pp. 2, 19.

**GROUND THREE:** Prosecutorial Misconduct.
   **Supporting Facts:** A trial court commits plain error by permitting the prosecutor (1) to elicit inadmissible, irrelevant and highly prejudicial hearsay testimony, (2) to cross-examine defense witnesses' regarding the truth of additional inadmissible, irrelevant and highly prejudicial hearsay statements not in evidence, and (3) to argue the truth of further irrelevant, inadmissible and highly prejudicial hearsay statement not in evidence to the jury in closing arguments.

**GROUND FOUR:** Ineffective Assistance of Counsel.
   **Supporting Facts:** A criminal defendant is denied the effective assistance of counsel where counsel failed to enter rudimentary objections and grossly mishandled an exculpatory witness by failing to offer his testimony, failing to adequately proffer that his testimony would have been that he coached the alleged victim's accusations, and failing to file a motion for new trial based upon this exculpatory witness's more detailed post-verdict statements.

**GROUND FIVE:** Withholding evidence.
   **Supporting Facts:** On April 20, 2001, appellant was arrested, during the arrest, officers removed a blanket from appellant's home saying that appellant's DNA was on it. Appellant was ordered to take a DNA test. During the trial, this item that was taken from appellant's home was never entered in as evidence. If this item would have been at trial, it would of showed that the wrong person was being charged. Because of prosecution's and defense counsel's multiple instances of misconduct, both prosecutor and defense counsel failed to protect appellant's right to seek dire[ct] appellant's review of the

inadmissibility of this item which was taken from appellant's home. This fell well below
an objective standard of reasonableness.

Doc. 1, p. 33; Doc. 1-1, p. 2.

> **GROUND SIX:** Habeas Grounds A and B: Appointed appellate counsel Sweeney made
> one 'maybe' claim in his <u>Anders</u> brief, that Williamson may have been improperly
> advised on his state PRC right/obligation. . . . Williamson had a right . . . to file his own
> brief. . . . Williamson never was delivered the notice. . . .

> **GROUND SEVEN:** Habeas Ground C: Direct Appeal <u>Anders</u> Brief counsel Sweeney
> provided ineffective appellate counsel in failing to raise the 11.6.2014 trial court's error
> in failing to impose a "Judgment" passing constitutional muster at hearing, and the same,
> in writing thereafter in a judgment (journal) entry.

> Constitutionally speaking, it was inherently ineffective assistance for appellate counsel
> not to even raise an underlying argument of lack of jurisdiction, and ineffectiveness of
> 11.6.2014 counsel for not objecting to lack of jurisdiction. . . .
> Failure to raise a dispositive motion causing a lesser sentence constitutes ineffective
> assistance of appellate counsel. . . .

> **GROUND EIGHT:** Habeas Ground D: Direct Appeal <u>Anders</u> brief counsel Sweeney
> provided ineffective assistance of counsel in failing to raise the 11.6.2014 trial court's
> harmful error in failing to grant Williamson leave to alloc[u]te.

> **GROUND NINE:** Habeas Ground E: (A) The indictment under which Williamson was
> convicted was unconstitutionally void for duplicitousness [sic].

> <u>Anders</u> Appellate counsel Sweeney was ineffective for failing to raise lack of jurisdiction
> to proceed at all on 11.6.2014 because the indictment was duplicitous [sic] or otherwise
> in violation of the cruel and unusual, double jeopardy and due process clauses. . . .
> (B) It was obvious this indictment was carbon-copy to anyone reading it. . . .

> **GROUND TEN:** Habeas Ground F: Williamson is being denied finality of sentencing
> under the due process, double jeopardy, and cruel and unusual punishment clauses, in
> these continuing "resentencings" caused by trial court error or malice.

> **GROUND ELEVEN:** Habeas Ground G: This is a grounds based upon Williamson's
> underlying claim that, the "allied" offense notion of double jeopardy codified in the
> O.R.C. (<u>State v. Ruff</u>, 143 Oh. St. 3d 114, 117-118 (2015)) required that Williamson be
> sentenced for only one offense of rape, not twelve; or that the sentences should have run
> concurrently.

Doc. 1-1, pp. 2, 21, 24-25, 28, 30-31, 32.

> **GROUND TWELVE:** Habeas Ground 1: Given the Ohio trial court's previous history
> of judicial vindictiveness against this Defendant and others similarly situated, coupled

21

with the trial court's failure to provide substantive Findings of Fact and Conclusion of Law in its JE denial of Williamson's PCRP, the 5th and 14th Amendments' due process clauses mandate the vacation of the underlying criminal convictions, and/or sentences.

**GROUND THIRTEEN:** Habeas Ground 2: The trial court erred in denying Petitioner's PCRP motion for appointment of counsel.

Claim No. 1: Re-Sentencing Hearing Counsel (11.6.2014) failed to raise the lack of the trial court's jurisdiction to enter judgment on conviction of the 12 counts or to sentence or resentence the Defendant to one life-sentence per count because of a violation of the Defendant's federal and state constitutional rights to due process of law and a fair trial and against double jeopardy, because all the counts of the indictment, as well as the descriptions in the Bill of Particulars were, duplicative, U.S. v. Foster, 765 F. 3d 610 (6th Cir. 2014), HN. 1; and, accordingly, void.

Claim 2: Re-Sentencing Counsel (11.6.2014) failed to raise the lack of the trial court's jurisdiction to resentence unless it actually did vacate the previous sentencing and resentence in full pursuant to the order of the Cuyahoga County Court of Appeals in State v. Williamson, No.: CA-102320....

Claim 3: Sentencing Counsel failed to raise the lack of the trial court's jurisdiction to resentence the Defendant to add additional punishment, post-release control, or 5 years of post-release control, upon a conviction for which the defendant had already received punishment, and for which he had already served prison time, with jail-time credit, as of 11.6.2014, of 13 years, because the imposition of the additional punishment, was, and is, a violation of the double jeopardy and due process of law clauses of the U.S. and Ohio Constitutions. See, Hernandez v. Kelly, 108 Ohio St. 3d 395 (2006).

Claim 4: Sentencing Counsel failed to raise the voidness of resentencing, or sentencing, the Defendant to 12 life-sentences because of the trial court's vindictiveness caused by trial counsel's ineffectiveness in promising the Defendant a plea agreement (see, infra) not realizable, causing the Defendant to exercise his right to go to trial and to confront the witnesses against the Defendant, especially the victim, called as a prosecution, not a defense witness at trial, in violation of the Defendant's rights to Ohio and federal due process of law.

Claim 5: Sentencing Counsel failed to raise the voidness of the resentencing hearing because the Defendant was being brought back, and had been brought back previously, from his places of incarceration all over Ohio to the trial court for repetitive resentencings in disregard of due process of the law, and against the prohibition of cruel and unusual punishment.

Claim 6: Re-Sentencing Counsel (11.6.2014 Hearing) offered the Defendant a new plea deal to a limited reasonable term of years, and then told him inside the courtroom he was not going to get it. This so mentally deranged the Defendant he was not capable of allocuting intelligibly, or understanding the nature of the sentencing hearing to be able to effectively assist his counsel. See Lafler v Cooper, 132 S.Ct. 1376 (2012).

Claim 7: The trial court lacked subject matter jurisdiction, a federal constitutional right, to enter judgment on conviction of the 12 counts or to sentence or resentence the Defendant to one life-sentence per count because of a violation of the Defendant's federal constitutional rights to due process of law, and a fair trial, and against double jeopardy because all the counts of the indictment, as well as the description in the Bill of Particulars, were duplicative. See, Foster supra. The indictment itself, therefore, was void.

Claim 8: This Court lacked subject matter jurisdiction, a federal constitutional right, to resentence the Defendant, unless it actually did vacate all previous sentences, and resentenced the Defendant, in full, which it did not.

Claim 9: The Trial Court lacked subject matter jurisdiction, a federal constitutional right, to add an additional punishment of 5 years mandatory PRC after the defendant had already received punishment and had served 13 years of his sentence because such a resentencing was in violation of the double jeopardy and due process clause of the U.S. Constitution, Foster, supra, HN. 1.

Claim 10: The Trial Court lacked subject matter jurisdiction to sentence the Defendant to 12 consecutive life sentences plus $240,000.00 in fines, because Defendant went to trial, a right he had under the 5th and 6th Amendments. . . .

Claim 11: The Trial Court lacked subject matter jurisdiction to re-sentence the Defendant because the Defendant was being brought back to the common pleas court repetitive times for known-to-be-violative-of-due-process sentencings, in disregard of his federal and Ohio constitutional rights to due process of law and against cruel and unusual punishment, see, Hernandez v. Kelly, supra.

Claim 12: The trial court lacked subject matter jurisdiction to resentence the Defendant when it affirmatively denied him his Ohio and federal due process right of allocution at sentencing, and his concomitant right under R. Crim P. 32. [Sent. Tr. 11.6.2014, 19:20-25-20: 1-2]. . . .

Claim 13: The appellate court erred, and violated Williamson's federal due process right (See, Stemler v. Florence, 126 F. 3d 856 (6th Cir. 1997), HN 6, cert. den. Wince v. Stemler, 542 U.S. 813 (2004), cited with approval Hunt v. Sycamore Sch. Bd., 542 F. 3d 529 (6th Cir. 2008), by not providing a substantive review of Williamson's above 12 claims in the PCRP, which are made afresh in the Petition, supra here, requesting this habeas Court's substantive review.

Doc. 1-1, pp. 3-4, 45, 50-56.

**GROUND FOURTEEN:** DNA Application-based Hypothetical Ground 1: Provision of Brady and Lafler v. Cooper et al. were violated in not providing the DNA test.

**GROUND FIFTEEN:** DNA Application-based Hypothetical Ground 2: The O.R.C. 2953.71-2953.81 statutory scheme is unconstitutional pursuant to due process required by the Constitution of the United States; and pursuant to the equal protection clause of the 14th Amendment to that Constitution.

Doc. 1-1, pp. 5, 66, 70.

**GROUND SIXTEEN:** MfNT/PCRP-based Hypothetical Ground 1: Newly discovered evidence of a conviction of Neiswonger of the "rape" of L, or the state of Ohio bringing of an indictment against Neiswonger for either rape or obstruction of justice, in 2002, coupled with the state never having disclosed the same, and its result, in any pleading involving Williamson's subsequently and numerously made appellate claims before both state and federal courts, from 2002 until 2018, requires the grant to Williamson of a new trial.

Doc. 1-1, pp. 5-6, 75.

**GROUND SEVENTEEN:** Habeas Ground 3: The trial court committed plain error by permitting the prosecutor (1) to elicit inadmissible, irrelevant and highly prejudicial hearsay testimony, (2) to cross-examine defense witnesses regarding the truth of additional inadmissible, irrelevant and highly prejudicial hearsay statements not in evidence, and (3) to argue the truth of further irrelevant, inadmissible and highly prejudicial hearsay statement not in evidence to the jury in closing arguments.

**GROUND EIGHTEEN:** Habeas Ground 4: Appellant was denied the effective assistance of counsel where counsel failed to enter rudimentary objections and grossly mishandled an exculpatory witness by failing to offer his testimony, failing to adequately proffer that his testimony would have been that he coached the alleged victim's accusations, and failing to file a motion for new trial based upon this exculpatory witness's more detailed post-verdict statements.

**GROUND NINETEEN:** New Habeas Ground 5: Williamson's conviction should be vacated (1) because of egregious violations of due process of law and the fair trial provisions of the Constitution, in prosecutorial misconduct suppressing the exculpatory testimony of witness Neiswonger at trial; and separately (2) because of egregious violations of due process of law and fair trial provisions of the Constitution, in the plain error of the trial court with respect to the suppression of the exculpatory testimony of Neiswonger at trial; and (3) because of a Brady violation involving that suppression.

Doc. 1-1, pp. 6-7, 77, 94, 103. *See* Doc. 22, pp. 23-29; Doc. 1, Doc. 1-1.

The state court record is found at Doc. 13-1 and 13-2.

## II. Standard of Review under AEDPA

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a

petitioner must meet certain procedural requirements in order to have his claims reviewed in

federal court. *Smith v. Ohio Dep't of Rehab. & Corr.,* 463 F.3d 426, 430 (6th Cir. 2006).

"Procedural barriers, such as statutes of limitations and rules concerning procedural default and

exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim."

*Daniels v. United States*, 532 U.S. 374, 381 (2001). Although procedural default is sometimes

confused with exhaustion, exhaustion and procedural default are distinct concepts. *Williams v.

Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). Failure to exhaust applies when state remedies are

"still available at the time of the federal petition." *Id.* at 806 (quoting *Engle v. Isaac*, 456 U.S.

107, 125 n.28 (1982)). In contrast, when state court remedies are no longer available, procedural

default rather than exhaustion applies. *Williams*, 460 F.3d at 806.

    **Exhaustion.** A federal court may not grant a writ of habeas corpus unless the petitioner

has exhausted all available remedies in state court. 28 U.S.C. § 2254(b)(1)(A). A state

defendant with federal constitutional claims must fairly present those claims to the state courts

before raising them in a federal habeas corpus action. 28 U.S.C. § 2254(b), (c); *Anderson v.

Harless*, 459 U.S. 4, 6 (1982) (per curiam); *Picard v. Connor*, 404 U.S. 270, 275–76 (1971); *see

also Fulcher v. Motley*, 444 F.3d 791, 798 (6th Cir. 2006) (quoting *Newton v. Million*, 349 F.3d

873, 877 (6th Cir. 2003)) ("[f]ederal courts do not have jurisdiction to consider a claim in a

habeas petition that was not 'fairly presented' to the state courts"). A constitutional claim for

relief must be presented to the state's highest court in order to satisfy the fair presentation

requirement. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845-48 (1999); *Hafley v. Sowders*, 902

F.2d 480, 483 (6th Cir. 1990). In order to satisfy the fair presentation requirement, a habeas

petitioner must present both the factual and legal underpinnings of his claims to the state courts.

*McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). This means that the petitioner must

present his claims to the state courts as federal constitutional issues and not merely as issues

arising under state law.  *See, e.g.*, *Franklin v. Rose*, 811 F.2d 322, 325 (6th Cir. 1987); *Prather v. Rees*, 822 F.2d 1418, 1421 (6th Cir. 1987).

**Procedural Default.**  Procedural default may occur in two ways.  *Williams*, 460 F.3d at 806.  First, a petitioner procedurally defaults a claim if he fails "to comply with state procedural rules in presenting his claim to the appropriate state court."  *Id*.  In *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986), the Sixth Circuit provided four prongs of analysis to be used when determining whether a claim is barred on habeas corpus review due to petitioner's failure to comply with a state procedural rule: (1) whether there is a state procedural rule applicable to petitioner's claim and whether petitioner failed to comply with that rule; (2) whether the state court enforced the procedural rule; (3) whether the state procedural rule is an adequate and independent state ground on which the state can foreclose review of the federal constitutional claim and (4) whether the petitioner can demonstrate cause for his failure to follow the rule and that he was actually prejudiced by the alleged constitutional error.  *See also Williams*, 460 F.3d at 806 ("If, due to the petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.") (citing *Maupin*, 785 F.2d at 138).

Second, "a petitioner may procedurally default a claim by failing to raise a claim in state court, and pursue that claim through the state's 'ordinary appellate review procedures.'" *Williams*, 460 F.3d at 806 (citing *O'Sullivan*, 526 U.S. at 848).  "If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted."  *Id*.  While the exhaustion requirement is technically satisfied because there are no longer any state remedies available to the petitioner, *see Coleman v. Thompson,* 501 U.S. 722, 732 (1991), the petitioner's failure to have the federal claims considered in the state

courts constitutes a procedural default of those claims that bars federal court review. *Williams*, 460 F.3d at 806.

To overcome a procedural bar, a petitioner must show cause for the default and actual prejudice that resulted from the alleged violation of federal law or that there will be a fundamental miscarriage of justice if the claims are not considered. *Coleman*, 501 U.S. at 750.

**Merits Review.**  In order to obtain habeas relief under 28 U.S.C. § 2254(d), a petitioner must show either that the state court decision (1) resulted in a decision contrary to, or involving an unreasonable application of, clearly established federal law as determined by the United States Supreme Court ("contrary to" clause); or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings ("unreasonable application" clause). *Id*.

"Under the 'contrary to' clause, a federal habeas court may grant a writ if the state court arrives at a conclusion opposite to that reached by the [United States Supreme] Court on a question of law or [based on] a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-413 (2000).  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from th[e] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413.  "Clearly established federal law" refers to the holdings, not dicta, of the Supreme Court's decisions as of the time of the relevant state court decision, as well as legal principals and standards flowing from Supreme Court precedent.  *Id*. at 412; *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005).  A state court is not required to cite Supreme Court precedent or reflect an awareness of Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts" such precedent. *Early v. Packer*, 537 U.S. 3, 8 (2002); *Lopez v. Wilson*, 426 F.3d 339, 358 (6th Cir. 2005).  If the Supreme Court has not addressed the

27

petitioner's specific claims, a reviewing district court cannot find that a state court acted contrary to, or unreasonably applied, Supreme Court precedent or clearly established federal law. *Carey v. Musladin*, 549 U.S. 70, 77 (2006).

In determining whether the state court's decision involved an unreasonable application of law, the court employs an objective standard. *Williams*, 529 U.S. at 409. "A state court's determination that a claim lacks merit precludes federal habeas review so long as 'fair-minded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)); *see also Bray v. Andrews*, 640 F.3d 731, 738 (6th Cir. 2011). "A state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington*, 562 U.S. at 103.

**Ineffective Assistance of Counsel.**  The two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), governs ineffective assistance of counsel claims.  A petitioner must show that counsel was objectively unreasonable and a reasonable probability that, but for counsel's unreasonable failure, he would have prevailed on his appeal.  *Id.*, at 687-691, 694. Upon federal habeas review, there is a double layer of deference applied: to counsel, under *Strickland*, and to the state court of appeal's decision on the merits of that claim, under AEDPA. *Kelly v. Lazaroff*, 846 F.3d 819, 832 (6th Cir. 2017) (citing *Burt v. Titlow*, 571 U.S. 12, 15 (2013); *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011)).

### III. Analysis of Petition

### A. Williamson's Petition is not a successive Petition

Respondent concedes that Williamson's Petition is not a successive petition per *In re Stansell*, 828 F.3d 412 (6th Cir. 2016).  Doc. 22, p. 31.  The undersigned notes that, for purposes

of preserving its arguments for appellate review, Respondent asserts that *Stansell* was incorrectly decided.  Doc. 22, p. 31.

### B. Williamson's Petition is not barred by the statute of limitations

Respondent argues that Williamson's Petition is barred by AEDPA's one-year statute of limitations.  Doc. 22, pp. 31-44.  He asserts that (1) Williamson's Petition is time-barred because he filed it over one year after the judgment of his November 2014 resentencing became final and (2) even if his claims challenging his November 2014 resentencing are timely, his claims challenging his conviction in 2001 are not.  Doc. 22, pp. 31-40.

### 1. Williamson's Petition is not time-barred

Respondent asserts that that the statute of limitations began to run when Williamson's case became final per 28 U.S.C. § 2244(d)(1)(A).  Doc. 22, p. 34, 39.  Respondent states that Williamson's case became final on February 8, 2016, 90 days after the Ohio Supreme Court dismissed his appeal of the November 2014 sentencing.[5]  Respondent explains that Williamson's pending Rule 26(B) Application tolled the limitations period until February 24, 2016, when the Ohio Supreme Court dismissed *that* appeal.  Thus, he submits that the AEDPA limitations period ran unchecked for one year after that date and expired on February 25, 2017.  Because Williamson filed his Petition on February 28, 2018, Respondent argues, he is a year too late.

Respondent's statute of limitations calculation requires a finding that Williamson's second state petition to vacate his sentence, filed November 16, 2015, did not toll the limitations period.  Respondent argues that the petition did not toll the limitations period because it was denied as untimely by the court and, therefore, it was not "properly filed."  Doc. 22, p. 39.  *See* 28 U.S.C. § 2244(d)(2) (only properly filed state post-conviction or other collateral review items toll the limitations period); *Jurado v. Burt*, 337 F.3d 638, 640 (6th Cir. 2003).  But the trial court

---

[5]  The Ohio Supreme Court dismissed Williamson's appeal on November 10, 2015; 90 days later is February 8, 2016.

denied Williamson's petition to vacate his sentence without explanation.  Doc. 13-2, p. 108.  On

appeal, the Ohio Court of Appeals denied one of Williamson's four claims as untimely (because

it was an attack upon his original conviction) and two of his claims, arguably, as improper

(because he sought the wrong remedy for a claim of judicial bias) (Doc. 13-2, pp. 210-213); but

it rejected Williamson's fourth claim (failure of trial court to appoint post-conviction counsel) on

the merits.  Doc. 13-2, p. 214.  Thus, Williamson's petition was not denied entirely, as untimely;

while not successful, it cannot be said that it was improper.  Thus, Williamson's second petition

to vacate his sentence tolls the limitations period.

The Ohio Supreme Court dismissed Williamson's appeal of the court's denial of his

second petition to vacate sentence on March 15, 2017.  Doc. 13-2, p. 258.  Thus, the limitations

period expired one year later, on March 15, 2018, and Williamson's federal habeas Petition, filed

February 28, 2018, is timely.

### 2. Williamson's November 2014 resentencing is the triggering date for his claims challenging his 2001 conviction

Williamson asserts that the triggering event for all his claims, including those challenging

his 2001 conviction, is his resentencing date in November 2014.  Doc. 1, pp. 3-8.  In support, he

cites *Crangle v. Kelly*, 838 F.3d 673 (6th Cir. 2016), *In re Stansell*, 828 F.3d 412 (6th Cir. 2016),

*King v. Morgan*, 807 F.3d 154 (6th Cir. 2015), and *Magwood v. Patterson*, 561 U.S. 820 (2010).

Doc. 1, p. 3.  He contends that these cases support his position that the triggering event for the

statute of limitations for all claims in this case is 2014, not 2001.

Respondent disagrees, and in support of his position relies on *Bachman v. Bagley*, 487

F.3d 979, 982 (6th Cir. 2007).  Doc. 22, p. 36.  He appears to concede that *Crangle* would

support Williamson's reading of the triggering event but disagrees that *Crangle* is the operative

case.  Doc. 22, pp. 37-38 ("Thus, *Crangle* is wrong and *Bachman* controls.").

In *Bachman*, decided by the Sixth Circuit in 2007, the petitioner was convicted of four counts of rape and numerous other related charges in 1995 and sentenced to life in prison; his conviction was affirmed on appeal.  487 F.3d at 980.  In 2004, the trial court held a hearing pursuant to Ohio's sex offender registration law and determined that he was a sexual predator; this determination was also affirmed.  *Id*.  In 2000, Bachman filed a federal habeas conviction challenging his original conviction, which the district court denied as untimely.  *Id*.  In 2005 he filed a second federal habeas conviction challenging his sexual predator determination.  *Id*.  On appeal, the Sixth Circuit rejected Bachman's argument that the limitations period on his petition began to run in 2004.  It explained that 2004 was the triggering event for a challenge to the sexual predator determination, but not the triggering event for a challenge to his underlying conviction.  *Id*., at 983.  Because Bachman's petition challenged his underlying conviction, it was untimely.  The Court stated, "Sixth Circuit precedent dictates instead that courts determine the beginning of the one-year statute of limitations period based on the content of the prisoner's claim."  *Id*. at 984.  In other words, the court took a claim-by-claim approach to determining the limitations period for each claim in the petition.

Three years later, in 2010, the Supreme Court decided *Magwood*, in which it held that a petitioner seeking to file a second federal habeas petition challenging a new sentence imposed after a full resentencing is not barred from doing so under the doctrine regarding successive petitions.  561 U.S. at 323-324.  In 2015, the Sixth Circuit decided *King* and extended the rule in *Magwood* to hold that a petitioner, after a full resentencing, can challenge not only the new sentence but also the underlying conviction without running afoul of the successive petition barriers.  *King*, 807 F.3d at 156.  In July 2016, the Sixth Circuit decided *Stansell*, another successive petition case.  The *Stansell* court discussed the claim-by-claim approach taken by the court in *Bachman* in the statute of limitations context and stated,

Extending *Bachman* to this case would require us to split a single judgment into multiple mini-judgments, each of which would serve as a distinct baseline for purposes of the second or successive inquiry. We then would have to assess each claim in a habeas petition separately, determining whether it attacked the reinstated portion of the judgment or the newly imposed portion, and we would have to subject the former claims to the second or successive requirements while exempting the latter from them. (We might have to split habeas petitions even more finely, dividing a single claim that attacks both parts of the judgment into two distinct claims, only one of which would have to overcome the second or successive bar. *See King*, 807 F.3d at 158.) This is the sort of claim-by-claim analysis that *Magwood* condemns. *See* 561 U.S. at 330–36, 130 S.Ct. 2788. Because we must apply the term "second or successive" to the application as a whole, not to the individual claims within it, *Magwood* precludes us from adopting *Bachman's* approach in the second or successive context. None of this should be taken to call *Bachman* into doubt. All that this decision and all that *King* attempt to do is try to apply *Magwood* faithfully in the second-or-successive context. These decisions, and most importantly *Magwood*, do not answer the distinct statute-of-limitations question raised in *Bachman*.

*Id*. at 418.

In September 2016, the Sixth Circuit did address the distinct statute of limitations question raised in *Bachman* when it decided *Crangle*. *Crangle* was a statute of limitations case and the court applied the interpretation in *Magwood* and *King* to the statute of limitations context. In *Crangle*, the petitioner was resentenced by the state trial court to advise him of his post-release control, which it had previously not done. 838 F.3d at 675, 680. The court held that the petitioner's resentencing triggered the statute of limitations not just to the petitioner's challenges to the resentencing but also his challenges to the underlying conviction. *Id*. In doing so, it remarked that *Magwood* and *King* abrogated *Bachman*. *Id*. at 678. In short, *Crangle* controls in this case, not *Bachman*. *See also Norris v. Bunting*, 2017 WL 749200, at *7-8 (S.D.Ohio Feb. 27, 2017) (rejecting the respondent's argument that *Bachman*, rather than *Crangle*, controls in a statute of limitations case when the state trial court resentenced the petitioner to advise him of post-release control).

Respondent contends that *Crangle* cannot overrule *Bachman* because one panel of the Sixth Circuit cannot overrule another published decision of a prior panel. Doc. 22, p. 37. But an

exception to that rule is when an inconsistent decision of the United States Supreme Court requires modification of the earlier decision.  *See Salmi v. Sec'y of Health & Human Servs.*, 774 F.2d 685, 689 (6th Cir. 1985).  After *Bachman* came *Magwood*, an arguably inconsistent decision of the United States Supreme Court that *Crangle* relied upon when modifying its earlier decision in *Bachman*.  *See id.*  Thus, *Crangle* controls, and it supports Williamson's contention that he is permitted to challenge not just the November 2014 resentencing but also his underlying conviction.  *Crangle*, 838 F.3d at 677.

### IV. Analysis of Claims

### A. Grounds 1 and 2 challenge Williamson's November 6, 2014, sentencing

### Ground 1 fails on the merits and is not cognizable

In Ground 1, Williamson argues that the trial court erred when it resentenced him on November 6, 2014, pursuant to the Ohio Court of Appeals' mandate that the trial court inform him of the post-release control portion of his sentence.  Doc. 1, pp. 8-9.  He asserts that *Crangle* and *Askew v. Bradshaw*, 636 Fed. App'x 342 (6th Cir. 2016), mandate that a judgment of conviction and sentence be "delivered to the defendant if alive and physically available, orally at a hearing ... and be entered as a written judgment in terms identical in substance to those delivered at hearing."  Doc. 1, p. 8.  *Crangle* and *Askew*, both decided in 2016, post-date the trial court's resentencing entry (November 2014) and, in any event, do not support Williamson's argument.  *Crangle* stands for the proposition that a resentencing entry restarts AEDPA's one-year limitations period.  *Askew* considered whether a federal habeas petition was properly rejected as successive.  These cases do not state that a particular type of journal entry violates a defendant's due process rights.  The sole Ohio case Williamson cites, *State v. Croom*, 2008-Ohio-2931, ¶ 15 (8th Dist. 2008), does not support his argument either.  Doc. 1, p. 9.  The court in *Croom* stated that a journal entry must reflect the defendant's sentence that was imposed at the

sentencing hearing.  2008 WL 2424672, at *2.  Here, the November 2014 journal entry reflected Williamson's sentence imposed at the hearing.  Doc. 13-1, p. 496 (journal entry); Doc. 1-2, p. 24 (sentencing transcript).

Williamson takes issue with the fact that his November 2014 resentencing was for post-release control only and was not an entirely new sentencing proceeding.  Doc. 1, p. 8 (asserting that the trial court judge "never had the constitutionally based authority to make a standalone judgment just dealing [with post-release control]...").  Doc. 1, p. 8.  This argument fails.  *See State v. Fischer*, 942 N.E.2d 332, 341 (Ohio 2010) (when a trial court does not impose post-release control as required, that part of the sentence is void and the defendant is entitled to a resentencing hearing *limited to the imposition of post-release control*) (emphasis supplied)).  Moreover, Williamson's argument is not cognizable because federal habeas courts cannot review state court interpretations on issues of state laws.  *Estelle v. McGuire*, 501 U.S. 62, 68 (1991) ("it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions.").

To the extent Williamson asserts that neither he nor counsel was present for his resentencing (Doc. 1, pp. 7, 8-9), his assertion is belied by the record.  See, e.g., Doc. 1-2, pp. 3-25 (trial court transcript of resentencing on November 6, 2014, wherein Williamson and his counsel were present and spoke on the record).  To the extent that Williamson asserts that he should somehow be present when a court issues its journal entry on the docket (Doc. 1, pp. 6-7), such an argument is not cognizable, is without legal authority, and lacks merit.

Ground 1 fails on the merits and is not cognizable.

### Ground 2 is not cognizable

In Ground 2, Williamson complains that he has been sentenced by the trial court five times.  Doc. 1, p. 13.  The undersigned observes that Williamson appears to be including the

dates that journal entries reflecting his sentencing hearings were filed on the docket.  See, e.g., Doc. 1, pp. 17-18 (counting his sentencing on January 29, 2002, and the journal entry issued on January 31, 2002, as two sentencing events).  Regardless, Williamson does not describe a constitutional right that has allegedly been violated by multiple resentencings on the part of the trial court.  And he may not challenge state court interpretations of state sentencing laws in a federal habeas petition.  *See Estelle*, 501 U.S. at 68.  Ground 2 is not cognizable.

### B. Grounds 3, 17, 4, 18, and 5 challenge court rulings and counsel's actions during trial in 2001[6]

#### Grounds 3 and 17 are not cognizable and/or fail on the merits; additionally, a portion is procedurally defaulted.

In Grounds 3 and 17, Williamson argues that the trial court erred by permitting prosecutorial misconduct when the prosecutor elicited hearsay testimony, cross examined witnesses about statements not in evidence, and made hearsay statements during closing argument.  Doc. 1, p. 33; Doc. 1-1, pp. 6, 78-93; Doc. 33, pp. 50-51.  Williamson included these grounds for relief in his first federal habeas petition, which the district court denied.  Doc. 13-1, pp. 248-249 (Report and Recommendation (R&R) finding that Williamson's claim fail on the merits); *Williamson*, 2006 WL 287991, at *3-5 (district court opinion explaining that the Ohio Court of Appeals reasonably determined that the trial court did not run afoul of state evidentiary rules and that, as a result, Williamson's claims did not rise to the level of a constitutional violation and were therefore not cognizable); see also Doc. 13-1, p. 272-271 (Sixth Circuit Order denying Williamson's certificate of appealability).  He provides no persuasive reasoning that the prior courts' determinations were faulty.  See Doc. 1-1, pp. 88-93 (arguing that the district court erred when considering his prior petition).  For all the same reasons discussed in the R&R, the district court opinion, and the Sixth Circuit Order dispensing with Williamson's first habeas

---

[6]  In some instances certain grounds in the Petition are duplicative or closely related.  The undersigned considers those claims together out of sequential order.

petition, Grounds 3 and 17 are not cognizable and/or fail on the merits.  *See id.*; *King*, 807 F.3d at 160 (discussing a petitioner bringing the same claims in second petition: "And if the federal courts previously addressed the merits of the claim, that likely will not be difficult to sort out. 'It will not take ... long to dispose of such claims where the court has already analyzed the legal issues.'" citing *Magwood*, 561 U.S. at 340 n. 15).

Moreover, Williamson's claim that the trial court erred when it barred defense counsel from calling two children (the victim's brothers) to testify at trial, Doc. 1-1, pp. 90-93, is also procedurally defaulted because Williamson never raised this as an issue on direct appeal (Doc. 13-1, pp. 37-56 (brief to the Ohio Court of Appeals)).  Although he referred to the fact that the two boys did not testify, it was in support of his argument that other testimony should have been excluded; he did not claim trial court error in barring the two boys from testifying at trial.  *See McMeans*, 228 F.3d at 681 (In order to satisfy the fair presentation requirement, a habeas petitioner must present both the factual and legal underpinnings of his claims to the state courts).  Because this claim is based on evidence in the trial court record, see Doc. 29, pp. 565-585 (lengthy discussion at trial of whether the boys should testify), Williamson may no longer raise this claim.  *Buell v. Mitchell*, 274 F.3d 337, 349 (6th Cir. 2001) ("Ohio courts have consistently held that claims that can be adjudicated based on facts in the record can only be presented on direct appeal," citing *State v. Lentz*, 639 N.E.2d 784, 785 (1994); *State v. Perry*, 226 N.E.2d 104, 108 (1967)).  Accordingly, this claim is procedurally defaulted.

Williamson does not allege cause for failing to raise the issue on direct appeal to overcome the procedural bar.  A petitioner can also overcome the procedural bar if he shows that he suffered a fundamental miscarriage of justice, i.e., that his is "an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent."  *Murray v. Carrier*, 477 U.S. 478, 496 (1986).  A claim of actual innocence "requires the

36

petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324, 327 (1995).

Williamson appears to argue that he has evidence of actual innocence: a purported confession from Neiswonger.  Doc. 33, p. 37; *but see* Doc. 33, p. 39: ("while Williamson does not make a 'miscarriage of justice claim upon actual innocence' per se ... he predicates all his existing claims which touch upon the Neiswonger affair pleading an asserted constitutional error at trial...he would wish to make...upon a new factual development[.]").  For context, the undersigned provides a portion of the Ohio Court of Appeals' decision on direct appeal, in which it explains what Williamson terms "the Neiwsonger affair":

{¶ 34} Prior to the start of trial, defense counsel produced Neiswonger, a handicapped man that paid rent and lived within the defendant's household, as a witness for the defense.[1] Defense counsel proffered that Neiswonger was going to testify that he also molested the victim. (Tr. 737–49). The trial court determined that Neiswonger's testimony was being introduced for the purpose of contradicting the victim's testimony[2], and was not exculpatory in nature. (Tr. 748, 864). We agree.  A witness may not be impeached by evidence that merely contradicts her testimony on collateral matters. *State v. Boggs* (1992), 63 Ohio St.3d 418, 422, 588 N.E.2d 813. Since no defense to the charge of rape against the defendant would be implicated by Neiswonger's testimony that he also molested the victim, that issue was irrelevant to the matter. Accordingly, since the evidence was not properly admissible, counsel's failure to call Neiswonger as a witness was not prejudicial. Thus, defendant was not rendered ineffective assistance of counsel. See *Bradley, supra*.

[FN 1] The case was set for trial on three separate occasions. Neiswonger did not come forward until the third trial. In addition, Neiswonger never made a statement to the police or social services.

[FN2] During trial, the victim denied that Neiswonger touched her inappropriately or molested her. (Tr. 474, 485).

{¶ 35} Defendant also claims that at the time of sentencing, defense counsel discovered that Neiswonger was going to testify that he coached the victim regarding her accusations against defendant. The record does not support this argument. Indeed, the transcript shows that Neiswonger was present at the sentencing and declined to make any statement. (Tr. 857–859).

*Williamson*, 2002 WL 31667650, at *5.

Williamson's reliance upon a purported affidavit written by Neiswonger fails because such an affidavit is not new evidence; the information in the affidavit existed at the time of trial and sentencing (see, e.g., Doc. 29, pp. 861-864) and could have been, and was, raised on direct appeal. Doc. 13-1, p. 54 (state appellate brief describing testimony Neiswonger purportedly would have given at trial). Finally, the purported writing by Neiswonger is not attested to and, therefore, is not an affidavit. See, e.g., Doc. 13-1, pp. 210-217 (purported affidavit); *Rarden v. Dept. of Rehab. & Corr.*, 2012-Ohio-5667, ¶29, 2012 WL 6034859, at *6 (Oh. Ct. App. Dec. 4, 2012) (A valid affidavit must be signed by the affiant and notarized); 28 U.S.C. § 1756 (unsworn declarations must be made under penalty of perjury). Thus, it is not new reliable evidence that was not presented at trial. *Schlup*, 513 U.S. at 324.

Grounds 3 and 17 are not cognizable and/or fail on the merits; additionally, a portion is procedurally defaulted.

### Grounds 4 and 18 fail on the merits

In Grounds 4 and 18, Williamson argues that trial counsel was ineffective when he failed to object at trial, mishandled an exculpatory witness, did not proffer the witness' testimony, and failed to file a motion for new trial. Doc. 1, p. 33; Doc. 1-1, pp. 94-101; Doc. 33, pp. 52-53. Williamson included this ground for relief in his first federal habeas petition, which the district court denied. Doc. 13-1, pp. 249-254 (R&R); *Williamson*, 2006 WL 287991, at *6-7 (applying the *Strickland* standard and explaining that trial counsel was not ineffective, Williamson was not prejudiced, and Williamson's further assertion regarding the witness Neiswonger was not born out by the transcript); Doc. 13-1, pp. 272-274 (Sixth Circuit Order denying certificate of appealability). For all the same reasons discussed in the R&R, the district court opinion, and the

Sixth Circuit Order in dispensing with Williamson's first habeas petition, Grounds 4 and 18 fail on the merits.  *See id.*; *King*, 807 F.3d at 160.

### Ground 5 is withdrawn

In Ground 5, Williamson argues that evidence was withheld at trial because a blanket from his home was taken by police officers, who stated that it had Williamson's DNA on it, but that, despite Williamson taking a DNA test, the blanket was never entered into evidence.  Doc. 1-1, p. 103.  In his Traverse, Williamson expressly disclaims that this is a ground for relief in his Petition.  Doc. 33, p. 36 ("Respondent's 'Ground Five' is the 'blanket' claim.  This is not a claim for relief."); Doc. 33, p. 41, n.1 (stating that it is "clear [Respondent] has [not] read the petition, where the 'blanket' claim from the first habeas is explicitly dropped by Williamson" .... "what [Respondent] calls Williamson's 'Ground 5' (the 'blanket' claims) are thus totally nullified.").  To the extent Williamson did assert this claim in his Petition, he has withdrawn it.

### C. Grounds 6, 7, 8, 9, and 11 challenge the effectiveness of counsel appointed to appeal Williamson's November 6, 2014, sentencing

### Ground 6: a portion is withdrawn and the remainder fail on the merits

In Ground 6, Williamson argues that, with respect to his November 6, 2014, resentencing, appellate counsel was ineffective because he used the word "maybe" in his *Anders* brief and that notice that Williamson had a right to file his own brief was never delivered to him.[7]  Doc. 1-1, p. 21.  Williamson declares that the first part of this ground—counsel's use of the word "maybe"— is withdrawn.  Doc. 1-1, p. 21 ("Williamson will not be raising that argument as a claim in this habeas application.").

---

[7] An *Anders* brief refers to a letter filed by court-appointed appellate counsel stating that, after a conscientious review of the record, counsel finds that an appeal is wholly frivolous and is accompanied by a request to withdraw as counsel.  *Anders v. State of California*, 386 U.S. 738, 744 (1967); *Smith*, 528 U.S. at 259.

Williamson claims that appellate counsel was ineffective because counsel did not inform him that the Ohio Court of Appeals had permitted him to file a brief. See, e.g., Doc. 13-2, p. 13.[8] To succeed on an ineffective assistance of counsel claim, Williamson must show that he was prejudiced by counsel's alleged ineffectiveness. *Smith v. Robbins*, 528 U.S. 259, 285 (2000) (*Strickland* standard applies to an ineffective assistance of appellate counsel claim; the petitioner must show he was prejudiced by appellate counsel filing an *Anders* brief). Williamson does not show that he was prejudiced by appellate counsel's alleged failure to inform him that he was permitted to file a brief because the arguments Williamson made challenging his November 6, 2014, sentencing are without merit, as explained in the undersigned's discussion of Ground 1, *supra*, and Ground 9, *infra*. Generally, Williamson's arguments are based on his disagreement with *State v. Fischer*, 942 N.E.2d 332, 341 (Ohio 2010); had Williamson filed a brief the outcome would not have been different because his arguments were contrary to *Fischer* and he would not have prevailed. *See Smith*, 528 U.S. at 285-286 (to demonstrate prejudice for counsel's alleged ineffectiveness for not filing a brief, the petitioner must show that he would have prevailed on his appeal). Ground 6 fails on the merits.

### Ground 7 is procedurally defaulted

In Ground 7, Williamson argues that appellate counsel was ineffective for failing to challenge the trial court's jurisdiction to resentence him on November 6, 2014. Doc. 1-1, pp. 24-27. He asserts that it was "inherently ineffective assistance for appellate counsel not to even raise an underlying argument of lack of jurisdiction." Doc. 1-1, p. 25. Williamson concedes that this ground was not "the exact wording [he] used in describing the merits of this argument in his Ohio App. R. 26(B) application, but the substantive summary of the argument ... reflects the

---

[8] The undersigned assumes, without deciding, that Williamson properly raised the alleged failure of appellate counsel to inform him of his right to file a brief in his Rule 26(B) Application. Although Williamson stated in the "facts" section of his Rule 26(B) brief that counsel did not inform him of his right to file a brief, Williamson did not list this as an assignment of error. See Doc. 13-2, pp. 9-27.

substance of [his] first assignment listed..."  Doc. 1-1, p. 25, n.1.  The undersigned disagrees.
(Williamson's related claim, Ground 9, is discussed below)  This claim is procedurally defaulted
because Williamson did not fairly present it to the state courts.  *See McMeans*, 228 F.3d at 681
(In order to satisfy the fair presentation requirement, a habeas petitioner must present both the
factual and legal underpinnings of his claims to the state courts); *Williams*, 460 F.3d at 806.  He
does not demonstrate cause, prejudice or actual innocence.  Ground 7 is procedurally defaulted.

### Ground 8 is procedurally defaulted and fails on the merits

In Ground 8, Williamson argues that appellate counsel was ineffective for failing to
challenge the trial court prohibiting him from allocuting at his November 6, 2014, sentencing.
Doc. 1-1, pp. 28-29.  As with Ground 7, Ground 8 is procedurally defaulted because he did not
present this claim in his Rule 26(B) Application and cannot overcome the procedural bar because
he does not allege cause or show prejudice or actual innocence.  Moreover, his argument fails
because the trial court did permit Williamson to allocute at his November 6, 2014, resentencing,
see Doc. 1-2, pp. 9-23, as Williamson concedes, Doc. 1-1, pp. 28-29.  *See also State v.
Varholick*, 2011 WL 3859922, at *4 (Oh. Ct. App., 8th Dist., Aug. 26, 2011) ("The right of
allocution is not uncircumscribed, and the trial judge may limit a defendant's presentence
statement.  A trial judge does not have to indulge a defendant in venting his spleen, issuing a
diatribe, explaining extraneous matters, or engaging in drivel.").

### Ground 9 is procedurally defaulted

In Ground 9, Williamson argues that appellate counsel was ineffective for failing to
challenge the jurisdiction of the trial court to resentence him on November 6, 2014, on the basis
that the original indictment in 2001 was duplicative and violated Williamson's constitutional
rights.  Doc. 1-1, pp. 30-31.  This claim is procedurally defaulted because the Ohio Court of
Appeals (1) applied the doctrine of collateral estoppel, finding that counsel's alleged

ineffectiveness had been already rejected, and (2) found that Williamson was improperly attempting to bootstrap challenges to his 2001 conviction onto challenges to his 2014 resentencing.  Doc. 13-2, pp. 43-49.  Put simply, appellate counsel who was appointed to appeal Williamson's November 6, 2014, resentencing only for post-release control advisement cannot challenge Williamson's 2001 indictment.  *See State v. Fischer*, 942 N.E.3d 332, 341-342 (Ohio 2010) (on appeal from a resentencing only for post release control, a defendant cannot challenge any claims of error regarding his conviction under the law of the case doctrine); *State v. Church*, 1995 WL 643794, at *1 (Oh. Ct. App. Nov. 2, 1995) (dismissing appeal, explaining, "'bootstrapping' *to wit*., the utilization of a subsequent order to indirectly and untimely appeal a prior order ... is procedurally anomalous and inconsistent with the appellate rules which contemplate a direct relationship between the order from which the appeal is taken and the error assigned as a result of that order.").  Williamson cannot overcome the procedural bar because he does not demonstrate cause, prejudice or actual innocence.

Throughout his filings, and most notably in his Traverse, Williamson relies on *Crangle* to argue that the Ohio Court of Appeals' application of a procedural bar to any of his claims is not proper.  See, e.g., Doc. 33, p. 45.  Williamson's reading of *Crangle* is misplaced.  As discussed above, the Sixth Circuit in *Crangle* held that a petitioner's resentencing restarted the AEDPA statute of limitations for filing a federal habeas petition and permitted a petitioner to include challenges to the resentencing and the underlying conviction.  838 F.3d at 675, 680.  *Crangle* did not dismantle Ohio state court procedural rules or void Ohio state court rulings that a procedural bar prevented an individual from litigating or re-litigating issues in state court.  Ground 9 is procedurally defaulted.

### Ground 11 is procedurally defaulted

In Ground 11, Williamson argues that appellate counsel appealing his November 2014 resentencing was ineffective for failing to challenge the original indictment in 2001 on the basis that it was duplicative and violated Williamson's constitutional rights.  Doc. 1-1, pp. 30-31.  For the same reason explained above in Ground 9, Ground 11 is procedurally defaulted.

### D. Ground 10 challenges the trial court's sentencing and resentencing

### Ground 10 is not cognizable and fails on the merits

In Ground 10, Williamson argues that he is being denied the finality of sentencing because he was continually sentenced due to the trial court's error or malice.  Doc. 1-1, pp. 32, 35.  He also complains about the delay between his conviction and resentencing.  Doc. 1-1, p. 33. He claims that he has never been sentenced in the 17 years since his conviction.  Doc. 1-1, p. 34.

As an initial matter, Williamson cannot have it both ways: he cannot complain that he was sentenced too many times and then complain that he has never been sentenced.  His assertion that he has never been sentenced is belied by the record.  Moreover, his complaints about the state court's interpretation of state sentencing laws is not cognizable on federal habeas review.  *See Estelle*, 501 U.S. at 68.

Williamson's assertion that there was a delay in sentencing fails for numerous reasons. First, it is procedurally defaulted because Williamson never presented this claim to the Ohio courts as a constitutional violation; he only presented it as a reason appellate counsel was ineffective when appealing his November 2014 sentencing (Doc. 13-2, p. 21).  *See Davie v. Mitchell*, 547 F.3d 297, 313 (6th Cir. 2008) (a Rule 26(B) Application alleging ineffective assistance of appellate counsel claims for failing to raise issues on appeal does not preserve the underlying issues as stand-alone claims because they are "analytically distinct.").  Williamson cannot show prejudice to excuse the procedural default because he does not explain how he was

harmed by the trial court not informing him at sentencing of the post release control portion of his 12 consecutive life-term sentences.

Furthermore, the record belies Williamson's assertion that there was a delay in sentencing.  Williamson first brought up the issue regarding the trial court's advisement on post release control in December 2011, about 10 years after his conviction and original sentencing.[9] The trial court denied his motion shortly thereafter, reasoning that the court would advise Williamson of his post release control if necessary upon Williamson being released from prison. Williamson did not appeal.  About a year later, in November 2012, Williamson again raised the issue of post-release control, the trial court denied his motion, and the Ohio Court of Appeals issued a remand order instructing the trial court to enter a nunc pro tunc corrected sentencing entry.  The trial court complied with the remand order one month later.  Williamson filed another appeal.  Thus far, no delay by the trial court.

Then, on February 13, 2014, the trial court held a resentencing hearing for the limited purpose of advising Williamson, who appeared in person with appointed counsel, of his post-release control.  On September 11, 2014, the Ohio Court of Appeals determined that the trial court's nunc pro tunc entry (done pursuant to the court of appeals' order) was ineffectual and that a resentencing was required; it also found that the trial court, which had resentenced Williamson in February, did not have jurisdiction to do so because the case was on appeal.  The Ohio Court of Appeals issued another remand order instructing the trial court to resentence Williamson, which it did, on November 6, 2014.  This does not describe delay by the trial court.  *C.f. United States v. Sanders*, 452 F.3d 572, 582 (6th Cir. 2006) (four-year delay between court of appeals' remand order and trial court resentencing is not a due process violation).  If anything, the short

---

[9]  For citations to the record of these events, see the description of the procedural history of this case, pages 7-11, *supra*.

delays that did occur appear to be due to the fact that the trial court was attempting to expeditiously resolve Williamson's resentencing issue, not delay it.

### E. Grounds 12 and 13 challenge the trial court's rulings on Williamson's second petition to vacate or set aside sentence

#### Ground 12 is withdrawn

In Ground 12, Williamson argues that the trial court's history of vindictiveness, evidenced by the court refusing to provide findings of fact and conclusions of law when denying Williamson's second petition to vacate or set aside sentence, mandates that Williamson's convictions and sentence be vacated.  Doc. 1-1, p. 45.  In his Traverse, Williamson expressly disclaims that he is alleging this as a ground for relief.  Doc. 33, p. 36 ("Respondent's 'Ground 12' is not a habeas claim either.  It is merely factual development to be addressed cumulatively of [the state trial court's judge's] vindictiveness towards Williamson[.]").  To the extent Williamson alleged Ground 12, it is withdrawn.

#### Ground 13: of the three parts, two parts fail on the merits and one part is procedurally defaulted

In Ground 13, Williamson argues that the trial court erred in denying his motion for appointment of counsel for his petition to vacate or set aside his November 2014 sentence.  Doc. 1-1, p. 50.  In support, he relies on *Gunner v. Welch*, 749 F.3d 511 (6th Cir. 2014), *Trevino v. Thaler*, 569 U.S. 413 (2013), and *Martinez v. Ryan*, 566 U.S. 1 (2012).  Doc. 1-1, p. 51.  He reasserts the twelve prior claims he included in his post-conviction petition that he alleges the Ohio Court of Appeals did not address because they found his petition procedurally defaulted.  Doc. 1-1, pp. 51-55; Doc. 13-2, pp. 84-88.  He also adds a new "Claim No. 13" wherein he alleges the Ohio Court of Appeals erred when it did not provide a substantive review of his post-conviction petition.  Doc. 1-1, pp. 50-51.

#### a. Motion for appointment of counsel

45

Williamson's claim that the trial court erred in denying his motion for appointment of counsel for his petition to vacate or set aside his November 2014 sentence fails on the merits. The Ohio Court of Appeals found that he had no right to counsel for a post-conviction petition. Doc. 13-2, p. 214. *See Coleman*, 501 U.S. at 755 (no right to counsel in state collateral proceedings has been established). Williamson's purported reliance upon *Gunner*, *Trevino*, and *Martinez* as providing him a right to counsel for his post-conviction petition is misplaced. These cases did not establish a right to counsel for post-conviction proceedings; they held that ineffectiveness of post-conviction counsel (or no counsel) may constitute cause to overcome the procedural default of a claim on federal habeas review. *Martinez*, 566 U.S. at 8-9; *Trevino*, 569 U.S. at 417; *Gunner*, 749 F.3d at 520. Thus, Williamson's claim that the trial court erred when it denied him appointment of counsel fails.

### b. Claims 1-12

Claims 1-12 of Ground 13 are procedurally defaulted because the Ohio Court of Appeals applied a procedural bar to his petition when it found these claims were untimely and successive, as Williamson concedes. Doc. 1-1, p. 51; see also Doc. 13-1, pp. 197-215 (Ohio Court of Appeals explaining that Williamson's grounds in his petition are untimely, successive, and that he impermissibly "bootstrapp[ed]" challenges to his 2001 conviction onto newer challenges to his November 2014 resentencing). This is an adequate and independent basis on which the state can foreclose review. *See, e.g, Townsend v. Gansheimer*, 2009 WL 589332, at *7 (N.D.Ohio March 9, 2009) (post-conviction petition denied as untimely by state courts is a recognized ground for procedural default). For cause to excuse the procedural default, Williamson claims that he could not raise any of the issues earlier, such as on direct appeal of his 2001 conviction, because he was challenging sentencing counsel's actions (in 2014) based on evidence outside the record. Doc 1-1, p. 51. This argument fails because it misunderstands the Ohio Court of

Appeals' ruling.  The Ohio Court of Appeals ruled that Williamson's claims were untimely because, although he purported to challenge his November 2014 resentencing, the claims instead challenged his original conviction in 2001.  Thus, any purported evidence of ineffectiveness of counsel at resentencing in November 2014 is irrelevant and would not explain why Williamson's petition was 13½ years late.  Moreover, Williamson does not identify any evidence outside the record that he purportedly relied upon in his petition.  He cites to "Appendix H," a document in which he complains about the actions of his re-sentencing counsel.  Doc. 1-1, p. 51, n. 1; Doc. 1-9 (Appendix H).  Williamson's complaints about his re-sentencing counsel are irrelevant and do not rise to the level of credible, relevant evidence outside the record.[10]

### c. Claim 13

Williamson's last portion of Ground 13 alleges that the Ohio Court of Appeals erred when it found his petition untimely.  Doc. 1-1, pp. 55-56.  As explained above, the Ohio Court of Appeals did not err and properly enforced the procedural bar.  "Claim 13" fails on the merits.

### F. Grounds 14, 15 and 16 are not asserted as grounds in Williamson's Federal Habeas Petition

In Grounds 14, 15 and 16, Williamson argues that his constitutional rights were violated when his application for DNA testing was denied and asserts that newly discovered evidence of Neiswonger's purported conviction of rape requires that he be provided a new trial.  Doc. 1-1, p. 5-6.  Upon reviewing Respondent's Return of Writ listing these grounds for relief, Williamson asserts in his Traverse that these grounds are not "claims made actually in the current petition" but are claims that he "proposes hypothetically to be made in an amended petition if his pending motion for stay and abeyance is granted."  Doc. 33, p. 34.  Accordingly, these are not grounds for

---

[10]  For instance, Williamson claims that he was "emotionally distraught" when he arrived for his November 2014 resentencing hearing to be advised of post release control because he "was told there was not going to be any plea agreement."  Doc. 1-9, p. 12.  There was no plea agreement in Williamson's case.  His refusal to accept that his resentencing hearing in November 2014 was only for the trial court to advise him of his post-release control does not constitute evidence.

relief and the undersigned will consider these claims in the discussion of Williamson's motion for stay, *infra*.

### G. Ground 19 alleges a *Brady* violation at trial with respect to witness Neiswonger

### Ground 19 is procedurally defaulted

In Ground 19, Williamson argues that the state committed a *Brady* violation with respect to Neiswonger's alleged exculpatory testimony.  Doc. 1-1, pp. 103-105.  He concedes that he did not present this issue to the state courts as a *Brady* violation.  Doc. 1-1, p. 103 ("Williamson asserts that he is permitted....to make this violation of his <u>Brady v. Maryland</u>-based due process rights at his (only) trial ... even though Williamson has not exhausted this argument before the highest court.").  Ground 19 is procedurally defaulted.  *See Williams*, 460 F.3d at 806 (a petitioner's failure to present claims to the state courts constitutes a procedural default of those claims and bars federal court review); *McMeans*, 228 F.3d at 681 (In order to satisfy the fair presentation requirement, a habeas petitioner must present both the factual and legal underpinnings of his claims to the state courts).  Williamson does not allege cause to excuse his procedural default; ineffective assistance of appellate counsel on direct appeal cannot constitute cause because such a claim itself was never presented and is procedurally defaulted.  *See Edwards v. Carpenter*, 529 U.S. 446, 450-451 (2000) (when a petitioner procedurally defaults an ineffective assistance of counsel claim, ineffective assistance of counsel cannot serve as cause to excuse the procedural default of the underlying claim unless the petitioner can show cause and prejudice to excuse the ineffective assistance of counsel procedural default).  Williamson does not demonstrate actual innocence.  Ground 19 is procedurally defaulted.

### V. Analysis of Williamson's Motion for Stay and Abeyance

### A. Williamson's Motion for Stay and Abeyance as to Grounds 14 and 15 is moot and Grounds 14 and 15 were not asserted as grounds for relief in the Petition

Williamson filed a motion for stay and abeyance (Doc. 8).  He asserts that his "hypothetical" claims regarding his DNA application are unexhausted.  Doc. 8-1, p. 7; Doc. 33, p. 34.  He states that the trial court denied his request for DNA testing and that his appeal is still pending in the Ohio Court of Appeals.  Doc. 8-1, p. 7.  However, after Williamson filed his motion for stay and abeyance, the Ohio Court of Appeals affirmed the trial court's rejection of his DNA testing application and the Ohio Supreme Court has declined to accept his appeal.  *See State v. Williamson*, --N.E.3d--, 2018-Ohio-2226 (Oh. Ct. App. June 7, 2018); *State v. Williamson*, 2018-Ohio-4092 (Oct. 10, 2018).  Thus, Williamson's motion for stay and abeyance as to these grounds should be denied as moot.

Although Williamson states in his Traverse that he proposed Grounds 14 and 15 as "hypothetical" grounds "to be made in an amended petition if his pending motion for stay and abeyance is granted," Doc. 33, p. 34, Williamson did not allege Grounds 14 and 15 as grounds in his Petition.  He did not file a motion to amend his Petition to add Grounds 14 and 15.  Thus, Williamson has not properly alleged Grounds 14 and 15 in his Petition.

### B. Grounds 14 and 15 fail on the merits

In the event the Court considers Williamson's Grounds 14 and 15 described as "hypothetical" grounds in his Petition, these grounds fail on the merits.

### Ground 14 fails on the merits

In Ground 14, Williamson argues that, *if* the state tested flooring in the house and a cup and found DNA belonging to Williamson and/or the victim, the state was required to turn these results over to Williamson and they did not do so, violating *Brady* and *Lafler v. Cooper*.  Doc. 1-1, pp. 66-67(emphasis supplied).  However, the Ohio Court of Appeals explained that the state did not take evidence of the flooring or a cup in for testing.  *Williamson*, 2018 WL 2937877, at *3.  This factual determination by the court of appeals—that the state did not take this evidence

in 2001 or at any other time—is owed deference under AEDPA. *See* 28 U.S.C. § 2254(e)(1) (In a habeas corpus proceeding the state court's factual findings are presumed correct and the petitioner has the burden of rebutting that determination by clear and convincing evidence); *Railey*, 540 F. 3d at 397. Williamson offers no evidence, let alone clear and convincing evidence, that the state did take samples of these items and that the Ohio Court of Appeals' determination was incorrect. Ground 14 fails on the merits.

### Ground 15 fails on the merits

In Ground 15, Williamson argues that the DNA testing statutory scheme, R.C. 2953.71-2953.81, is unconstitutional. Doc. 1-1, p. 70. He complains that the terms "exclusion" and "outcome-determinativeness" are vague, rendering the statutes void. Doc. 1-1, p. 70. He further asserts that the statutory scheme violates the equal protection clause because it causes defendants like him, who allege DNA in "realty" (i.e. DNA in part of a house), to go without DNA testing in their cases whereas defendants who alleges DNA in "tangible objects or personalty" have access to DNA testing. Doc. 1-1, pp. 71-73; Doc. 8, p. 19.

The Ohio Court of Appeals rejected Williamson's claim. It observed, "The United States Supreme Court has held that there is no substantive due process right to obtain evidence for DNA testing in a postconviction setting. *Dist. Attorney's Office for Third Judicial Dist. v. Osborne*, 557 U.S. 52, 68, 129 S.Ct. 2308, 174 L.Ed.2d 38 (2009)." *Williamson*, 2018 WL 2937877, at *3. It then considered his claim that the terms "exclusion," "exclusion result," and "outcome determinative" were unconstitutionally vague and rejected his argument, explaining,

> DNA-testing results are "exclusive" if they scientifically preclude or foreclose the subject offender as a contributor of biological material recovered from the crime scene or victim. "Exclusive" results are "outcome determinative" if, had the results been presented at the offender's trial and been found relevant and admissible, no reasonable factfinder would have found the offender guilty of that offense.

*Id*. at *4 (internal citations to legal authority omitted).  Finally, the Ohio Court of Appeals found that Williamson's Equal Protection challenge failed because he could not show that he was similarly situated to other inmates defined in Ohio's DNA statutory scheme, R.C. 2953.71.  *Id*. at 5.  The court remarked that, unlike inmates defined in R.C. 2953.72, Williamson sought to compare physical items that were not and never had been in the state's control.  *Id*. ("The Equal Protection Clause 'does not require things which are different in fact ... to be treated in law as though they were the same.'") (citations omitted).  The Ohio Court of Appeals' determination was reasonable; it cannot be said that its ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement."  *Harrington*, 562 U.S. at 103.  Ground 15 fails on the merits.

### C. Williamson's Motion for Stay and Abeyance as to Ground 16 should be denied

In Ground 16, Williamson argues that he should get a new trial because the state never disclosed the newly discovered evidence that witness Neiswonger was convicted of raping the victim or obstructing justice.  Doc. 1-1, p. 75.  Ground 16 is unexhausted because Williamson's appeal to the Ohio Court of Appeals regarding this claim is currently pending.

Under *Rhines v. Weber*, 544 U.S. 269 (2005), a district court has discretion to stay a mixed petition, i.e., a petition containing exhausted and unexhausted claims.  However, "[s]taying a federal habeas petition frustrates AEDPA's objective of encouraging finality by allowing a petitioner to delay the resolution of the federal proceedings [and] . . . undermines AEDPA's goal of streamlining federal habeas proceedings by decreasing a petitioner's incentive to exhaust all his claims in state court prior to filing his habeas petition."  *Id*. at 277.  Thus, stay and abeyance is only appropriate in limited instances such as "when the district court determined there was good cause for the petitioner's failure to exhaust his claims first in state court.

Moreover, even if a petitioner had good cause for that failure, the district court would abuse its discretion if it were to grant him a stay when his unexhausted claims are plainly meritless." *Id.*

Here, Williamson does not allege good cause for his failure to exhaust Ground 16 in state court prior to filing his habeas petition.  The events surrounding witness Neiswonger were known to Williamson at the time of his trial and his sentencing in December 2001 and January 2002, respectively.[11]  Williamson does not explain why he waited 16 years before raising this claim in the state courts.  Moreover, although Williamson states that he does not know whether Neiswonger was ever charged, and, if so, what charges were brought against him, Doc. 1-1, pp. 75-76, he admits to knowing that a "no bill" was entered in a case against Neiswonger in August 2002 and that he was not charged with obstruction of justice, Doc. 33, p. 39.  His apparent belief that Neiswonger was convicted of raping the victim is due to a typo in the state's brief in response to Williamson's application for DNA testing.  See Doc. 1-1, p. 75 (Williamson referring to the state's brief in opposition on appeal of Williamson's DNA application stating that Neiswonger was convicted of the rapes of the victim); Doc. 13-2, p. 410 (state's brief erroneously stating that Neiswonger was convicted of the rapes).  Because Williamson does not show good cause for failing to exhaust this ground in state court, and because his claims are plainly meritless, his motion to stay these federal habeas proceedings to assert Ground 16 once it is exhausted should be denied.  *See Rhines*, 544 U.S. at 277.

---

[11] A search of the Cuyahoga County court docket shows that a "no bill" was entered in a case against Neiswonger in August 2002 and he was not charged with obstruction of justice.  The trial court and the prosecutor discussed the possibility of Neiswonger being charged with obstruction of justice at Williamson's trial in December 2001, Doc. 29, p. 756, and sentencing in January 2002, Doc. 29, p. 884.

## VI. Conclusion and Recommendation

For the reasons stated above, the undersigned recommends that Williamson's Petition be **DENIED** in part and **DISMISSED** in part.  Williamson's motion for stay and abeyance (Doc. 8) should be **DENIED**.

Dated: November 6, 2018

*/s/ Kathleen B. Burke*
_____

Kathleen B. Burke
United States Magistrate Judge

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).